WICKER, Judge.
Riley Alex Spearman, Jr. appeals the dismissal of his claims of malicious prosecution and false imprisonment against the Louisiana Training Institute and its superintendent, Benny G. Harris. We affirm.
Spearman was employed as a painter at L.T.I. in Bridge City, Louisiana from about 1972 until 1978. During 1977 meat was stolen from this correctional facility, and suspicion focused on several employees and inmates as a result of statements of Lawrence Stagg, one of the inmates. Harris questioned Spearman about the theft, which Spearman denied, on November 10, 1977. Spearman was arrested, handcuffed, and taken to jail in a police car on November 14, 1977; and a local television station aired this news. The judge at Spearman’s criminal trial dismissed charges against Spearman on a directed verdict on May 22, 1978.[1] Spearman filed this suit November 15, 1978.
The case was not tried until April 26, 1988; and the witnesses were Harris, Spearman, and Kuester.
Harris testified that when he learned of the thefts, he had Kuester do some investigation and appointed a committee to look into the matter; but he didn’t personally participate in the investigation. Kuester and other staff members talked to the inmates who were allegedly involved; and Harris thought he wasn’t present when this questioning took place, even though the written reports indicated he was there. He did interview Spearman personally, however; and he accepted Spearman’s denial of involvement. He didn’t try to negotiate with Spearman, but he advised him that if he were found not guilty he could return to work with all of his back pay. He had no specific opinion about Spearman’s moral character and reputation at the time of the theft. Harris couldn’t recall whether he turned over the results of the investigation to the police but he “cooperated with any law enforcement agency.” He thought the police would have initially met with the chief of security. Harris couldn’t recall having personally reported the theft to the police; however, as administrative head he *608 would have been the complainant. He testified that the police “made an independent decision that the arrest should be made.” He couldn’t recall if he gave any information about Spearman to the news media. Harris recommended that the juvenile inmates of L.T.I. not be prosecuted for the theft.
Kuester testified that one of the inmates originally advised him that some of the inmates were stealing food and that he contacted Harris. He had reservations about the reliability of the information given by the inmates, making him and Harris reluctant to act and make accusations; however, he couldn’t recall whether or not he told the district attorney that the inmates’ testimony might be unreliable. Harris was the only one who personally talked to Spearman about the theft, although Kuester was present. Harris told the people allegedly involved that “if they told him that they were involved in it, that he would do his utmost to keep it from going any further and keep it as an internal department matter.” Kuester was not personally aware of anything about Spear-man that would indicate lack of trustworthiness, and Spearman did nothing during his five-year employment to make Kuester think he might be stealing meat. Kuester couldn’t recall whether or not he had any dealings with the police or if all that was done by Harris. The police who investigated talked to some of the inmates and took statements.
Spearman testified that he worked at L.T.I. for five years and that the only time he was even disciplined there was for shooting pool. He had no criminal record. Two days before his arrest, Harris asked him about any involvement in the theft; and Harris apparently believed his denial. He was arrested on November 14, 1977, in Harris’ office; handcuffed; put in a squad car; and jailed for almost twenty-four hours. Harris was the only person who talked to him about the theft. Spearman saw his arrest on television the following night. All criminal charges were dropped against him when he went to court, and he received all his back pay from L.T.I. However, he was never able to return to work at L.T.I. because he was injured while he was working at another job during his suspension. He was asked to resign, and he did, in September because his injury prevented his returning to work. This arrest and his inability to return to L.T.I. have affected his ability to get other jobs. In addition, at the time of his arrest, he had made five to seven records, although he was not yet earning any money from this. He felt Harris had let him down.
Harris, Kuester, and Spearman all testified the relationship between Harris and Spearman was a good one.
The trial judge ruled that Spearman was arrested as a result of an independent investigation by the police, and that Harris bore no malice toward Spearman. He found that two of the elements of malicious prosecution, causation and malice, were not present in this case, citing Jones v. Soileau, 448 So.2d 1268 (La.1984). Spearman assigns these two findings, lack of causal connection and malice, as errors of the trial court.
The Supreme Court has outlined the proof required for malicious prosecution in Miller v. East Baton Rouge P. Sher. Dept., 511 So.2d 446, 452-53 (La.1987) citations omitted).
An action for malicious prosecution in a criminal proceeding lies in all cases where there is a concurrence of the following elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff.
[[Image here]]
The individual interest in freedom from unjustifiable litigation and the social interest in supporting a resort to law have traditionally been balanced by the requirement that the plaintiff must prove these essential elements to establish a *609 malicious prosecution action against an accuser.
[[Image here]]
Chief among these elements is the requirement that the plaintiff must sustain the burden of proof that the criminal proceeding was initiated or continued without “probable cause”. Probable cause for arrest exists when facts and circumstances within the knowledge of the arresting officer and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense.
[[Image here]]
The appearances must be such as to lead a reasonable person to set the criminal process in motion; unfounded suspicion and conjucture [sic] will not suffice. ... Verification may be required to establish probable cause where the source of the information seems unworthy, or where further information about a serious charge would be readily available. ... The reputation of the accused, his opportunity to offer explanation, and the need for prompt action, if any, are all factors in determining whether unverified information furnishes probable cause....
Second of importance in actions of malicious prosecution is the element of defendant’s malice. However, malice does not submit readily to definition.... It means something more than the fictitious “malice in law” which has been developed in defamation cases as a cloak for strict liability. There must be malice in fact_ Any feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice.... But it is not essential to prove such ill will. Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to “tie up the mouths” of witnesses in another action, or as an experiment to discover who might have committed the crime.... Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person’s rights.... Since the determination of malice in a malicious prosecution case is a question of fact, the issue is to be determined by the trier of fact unless only one conclusion may reasonably be drawn from the evidence.... On appellate review such a finding is reversible only if manifestly erroneous or clearly wrong....
We believe Spearman has suffered an injustice, but we agree with the trial judge that neither Harris nor L.T.I. were the cause of Spearman’s prosecution and that Harris bore no malice toward Spearman. His findings are not manifestly erroneous, and we affirm them.
AFFIRMED.

. Stagg was unavailable to testify at trial since he had been convicted of attempted murder, aggravated rape, aggravated armed robbery, and aggravated kidnapping and was in a Texas jail. Another witness, Aaron Mitchell, had been paroled and was out of the jurisdiction. Thomas Kuester, L.T.I.’s deputy superintendent, testified that Stagg played a principal role in the investigation. Kuester also testified that he didn’t see Spearman steal anything. Two other prosecution witnesses, Gregory Taylor and Willie Watson, 15-year-old L.T.I. inmates, testified that Stagg took the meat.