609 So.2d 838 (1992)
Nathaniel JOSEPH
v.
William CANNON, Steve Manning, Charles Alonzo, City of New Orleans, the Willows Apartment Complex, ABC, et al.
No. 91-CA-363.
Court of Appeal of Louisiana, Fifth Circuit.
October 27, 1992.
*839 Nathaniel Joseph, pro se.
Reginald J. Laurent, Asst. City Atty., New Orleans, for appellant.
Suzanne Ganucheau, New Orleans, for William Cannon.
Edwin R. Murray, New Orleans, for Nathaniel Joseph.
Before KLIEBERT, BOWES and GRISBAUM, JJ.
BOWES, Judge.
Plaintiff, Nathaniel Joseph, Jr. (hereinafter "Joseph"), and defendant, City of New Orleans (hereinafter "the City"), appeal from a judgment of the district court which ultimately found the City liable for damages to Joseph. In the district court, the jury returned a verdict against defendants, Steve Manning and The Willows Apartments. This has not been appealed. Defendant, William Cannon, was dismissed from the suit after the close of the plaintiff's case. The jury also returned a verdict against the City of New Orleans. Joseph has appealed several aspects of these judgments. We affirm in part and reverse in part.

FACTS
On March 20, 1986, defendant, William Cannon, an elderly New Orleans resident, was getting out of his car in New Orleans East at the intersection of Martin Drive and I-10 Service Road (NBC Bank) when he was kidnapped at gunpoint and robbed of his money and of his automobile. Cannon was forced to stay in the car with the robber who drove in and out of the Willows Apartment Complex several times before shoving Cannon out at another location and driving away. Minutes later Cannon waived down a truck which took him directly to the Seventh District Police Station. He related details of the crime to Officers Charles Alonzo and Fred Thompson. Alonzo jotted down written notes of Cannon's description of the perpetrator and his automobile and then broadcasted a description of these and of the area in which Cannon had been taken, as well as a description of the robber, and then left the station to investigate the incident. Officer Thompson remained at the station in order to take the original written report from Cannon. The description that was broadcast was exactly that which Cannon had given to Alonzo, i.e. a black male, 20-25 years old, approximately 5'9" or 5'10", weighing about 150 pounds, clean shaven with dark hair, and wearing army fatigue type pants and a gray baseball type cap.
Officer Howard Martin and his partner received the broadcast description of the Cannon vehicle and of the suspect, and proceeded to the area to check and inspect the Willows apartment complex.
At the back of the complex they located Cannon's automobile. They observed that the motor was still hot and the keys were in the ignition. Alonzo had learned of these facts via radio communication and proceeded to the Willows Apartments where he met Martin. Officers Martin and Alonzo then spoke with the apartment manager, Steve Manning. After giving him the complete broadcast description of the suspect, they asked whether anyone fitting that description lived in the complex. Manning immediately, and without hesitation, told the officers that there was indeed a person named Nathaniel Joseph fitting that description, and who regularly wore the clothes and gray baseball hat described.
*840 Upon their request, he gave the officers the apartment number of Nathaniel Joseph. The officers then immediately proceeded to Joseph's apartment and knocked on the door, identifying themselves as police officers. Joseph replied to the knock immediately, but took several minutes to finally open the door which aroused the officers' suspicion. He was wearing pajamas and a gray baseball type cap, and fit the general description of the robber.
The officers asked to speak with him about the robbery and Joseph agreed. He was advised of his rights by the officers, who then asked him if he had any objections to their bringing the victim to the apartment for a possible identification. Joseph again had no objection. At some point, the young woman living with Joseph in the apartment gave the officers some army fatigue type pants belonging to Joseph.
When Mr. Cannon arrived at the apartment, he walked past the officers, straight up to Joseph, pointed to him and immediately positively identified him, without hesitation, adding that the cap Joseph was wearing was the same one he was wearing during the robbery. The robbery occurred at 11:00 a.m. Officer Alonzo spoke with Cannon initially between 11:20 and 11:30 a.m. and Joseph was arrested at 12:00 noon on the same day, again advised of his rights, and transported to Central Lockup.
Subsequently, a preliminary hearing was held in Criminal District Court where Judge Shirley Wimberly found there was probable cause for Joseph's arrest on the charge of Armed Robbery and denied Joseph's motion to suppress the identification. Following a trial by jury for Armed Robbery, at which Joseph offered an "alibi" defense, he was acquitted by a jury. This suit for damages followed.

PROCEDURAL HISTORY
In January of 1987, Joseph filed a petition for damages against Cannon, Manning, Officer Alonzo, the Willows Apartment Complex, the City of New Orleans, and their respective insurers. The petition alleged that Cannon filed a false complaint; that both Cannon and Manning either intentionally or negligently identified Joseph as the robber; and that Alonzo perjured himself in an effort to convict Joseph. Joseph asked for damages in the amount of $1,800,000.00.
The parties tried this matter on March 26, 27, and 28, 1990, before a judge and jury after extensive discovery. The district judge tried the matter as to the City of New Orleans and Police Officer Charles Alonzo, using the jury in an advisory capacity, to assess damages should the court find liability as to either the City or Alonzo. The jury was the finder of fact as to defendants Cannon, Manning and The Willows Apartments.
On motion for involuntary dismissal, the court dismissed Cannon from the suit, but denied motions to dismiss the remaining defendants, following the close of plaintiff's case.
The jury returned a verdict against Steve Manning and the Willows Apartments. Damages were assessed by the jury in the amount of Two Hundred Sixty Thousand and No/100 Dollars ($260,000.00), with fifty-eight percent (58%) of fault apportioned to the City of New Orleans (as the employer of Alonzo) and forty-two percent (42%) to Steve Manning and The Willows Partnership.
The trial judge found that Officer Alonzo committed no intentional tort and entered judgment in the officer's favor dismissing him also. The judge did, however, find that the City was negligent and entered judgment against it accordingly for $150,800.00 (58% of $260,000.00).
Both plaintiff, Joseph, and the City appeal the verdict and judgment. After filing some briefs, Mr. Jones filed motions to withdraw as counsel for Mr. Joseph and filed a petition for intervention in the appeal. By the time of final oral argument before this Court, Mr. Joseph voluntarily and by his own choice, represented himself in the appeal and at the final oral argument. At that time this Court afforded all parties unlimited time for argument.

*841 ANALYSIS

I. Plaintiff Joseph's Appeal

A. MALICIOUS PROSECUTION
Plaintiff appeals the dismissal of Cannon and Alonzo from the proceedings, averring that both were guilty of malice in the criminal proceedings against him.
Our law regarding malicious prosecution is well established:
An action for malicious prosecution in a criminal proceeding lies in all cases where there is a concurrence of the following elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff.
* * * * * *
The individual interest in freedom from unjustifiable litigation and the social interest in supporting a resort to law have traditionally been balanced by the requirement that the plaintiff must prove these essential elements to establish a malicious prosecution action against an accuser.
* * * * * *

Chief among these elements is the requirement that the plaintiff must sustain the burden of proof that the criminal proceeding was initiated or continued without `probable cause'. Probable cause for arrest exists when facts and circumstances within the knowledge of the arresting officer and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense.
The appearances must be such as to lead a reasonable person to set the criminal process in motion; unfounded suspicion and conjuncture will not suffice. Verification may be required to establish probable cause where the source of the information seems unworthy, or where further information about a serious charge would be readily available. The reputation of the accused, his opportunity to offer explanation, and the need for prompt action, if any, are all factors in determining whether unverified information furnishes probable cause.

Second of importance in actions of malicious prosecution is the element of defendant's malice. However, malice does not submit readily to definition. It means something more than the fictitious `malice in law' which has been developed in defamation cases as a cloak for strict liability. There must be malice in fact. Any feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice. But it is not essential to prove such ill will. Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to `tie up the mouths' of witnesses in another action, or as an experiment to discover who might have committed the crime. Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights. Since the determination of malice in a malicious prosecution case is a question of fact, the issue is to be determined by the trier of fact unless only one conclusion may reasonably be drawn from the evidence. On appellate review such a finding is reversible only if manifestly erroneous or clearly wrong.
[Emphasis supplied, citations omitted].

Miller v. East Baton Rouge P. Sher. Dept., 511 So.2d 446 (La.1987); Spearman v. Harris, 542 So.2d 606 (La.App. 5 Cir.1989).
In dismissing Cannon, the trial court stated as follows:
He was convinced in '86 and he is convinced today that Nathaniel Joseph *842 robbed him and kidnapped him. Malice would be a false statement to that effect then and now and if there's any evidence of that I want to hear it. He identified him then, he identified him the day before yesterday and I suspect if he takes the witness stand he is going to identify him again. Is the mistake malice, I think not.

* * * * * *
He has got eyes. That's what he is relying on, his eyes. That's the man that robbed me. I saw his face. I looked at him for 20 minutes. He slapped me in the face. He drove me around. I saw him. Now, honest erroneous belief in the identity of a criminal in my view creates no civil liability. If you can proof (sic) to me that he is being dishonest or there's some malice or some reason for malice, I'll listen to you. What you are suggesting is that if a citizen in the exercise of his duty apprehending criminals identifying criminals if he is an eye witness to a crime answering questions of police, specifically is this the man who robbed you, if he is wrong if he is shown to be wrong, he therefore buys civil monetary liability. I don't believe that's the law.

* * * * * *
But there's got to be evidence before this jury upon which it can reasonably become malice and the honest mistake of believe (sic) is not that. He makes a mistake and let's assume he makes a mistake. He is not liable unless it's done maliciously and I can't see any evidence upon which this jury could bring back a verdict against Cannon as of this point in time.
Absence of malice is fatal to an action for malicious prosecution, which requires that all elements enunciated in Miller, supra, concurs. Miller, supra; also Johnson v. Pearce, 313 So.2d 812 (La.1975); O'Conner v. Hammond Police Dept., 439 So.2d 558 (La.App. 1 Cir.1983). In addition to the above quoted "reasons" and testimony the entire record clearly shows that the trial court was absolutely correct in its finding that Cannon was without malice when he identified Joseph as the perpetrator.
Cannon's initial identification to Thompson was of a young black male, whose height he could not determine precisely because the robber was either bending over or sitting down the whole time. Cannon testified at trial that he told Officer Thompson that the perpetrator also had short hair and a pencil thin mustache, and army fatigues or camouflage pants; however, he did not watch what the officer was writing down. Joseph makes much over the discrepancy between (green) or army fatigues and camouflage (fatigue) pants. However, it is apparent from reading the record that Cannon used the terms interchangeably, as did several other witnesses including police officers. Moreover, the issue is something of a red herring because of the overwhelmingly positive in person, identification made by Cannon throughout the proceedings and the entire history of the case. This identification had little to do with whether Joseph wore green fatigues or army fatigues or camouflage pants. He was wearing neither when Cannon identified him. As far as the "clean-shaven" description in the Thompson report is concerned, a "pencil-thin" mustache is considered by the police (according to their testimony) as being clean shaven, and we do not find such a description to be out of order or inapplicable or having anything to do with an improper or mistaken identification. Joseph was wearing the mustache when he was positively identified in person by Cannon approximately one hour after the crime.
Cannon was positive and unwavering in his identification from the day of the crime through his last day in court. Cannon was previously unacquainted with Joseph, and there was no showing of hatred or ill will on his part. Moreover, for reasons discussed hereafter, malice could not be inferred from a lack of probable cause (as mentioned hereinabove) or from any evidence adduced at trial on the matter.
With regard to probable cause, it has been found as follows:

*843 The crucial determination in regard to the absence of probable cause is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff at the time charges were pressed. Jones v. Soileau [448 So.2d 1268 (La. 1984)] supra.
[Emphasis supplied].
Stark v. Eunice Superette, Inc., 457 So.2d 291 (La.App. 3 Cir.1984).
As delineated above, Cannon did, indeed, have such an honest and reasonable belief in the guilt of plaintiff. Therefore, since two of the necessary elements for an action in malicious prosecution are lacking, plaintiff can not recover from Cannon. Stark, supra.

DIRECTED VERDICT
This Court has discussed the criteria for a directed verdict in Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504 (La. App. 5 Cir.1984) wherein we stated as follows:
The court in Oppenheim v. Murray Henderson Undertaking, 414 So.2d 868 (La.App. 4th Cir.1982) affirmed a motion for directed verdict made by plaintiff in a trial by jury. As to the proper standard, that court pronounced, and we adopt, the following:
The standard for granting a directed verdict (Art. 1810(A) of the Louisiana Civil Code Procedure) was set out in Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979), whereby the court stated:
`[The statute allows] the judge to conclude the litigation (in a jury trial) if the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict.'
The court, in Campbell, further states that the standard of proof is to be based on the Federal standard and cites the language in Boeing Co. v. Shipman, 411 F.2d 365 (U.S. 5th Cir. 1969) in enunciating the state standard to be used:
On motion for directed verdict and for judgment notwithstanding the verdict that Court should consider all of the evidencenot just that evidence which supports the non-mover's case but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions (sic) is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

Villaronga v. Gelpi Partnership Number 3, 536 So.2d 1307 (La.App. 5 Cir.1988).
We agree with the trial court that there was no evidence before the jury upon which it could reasonably base a finding of malice on the part of Cannon. His honest and reasonable belief in the guilt of plaintiff also compels a finding of probable cause. The trial court has much discretion in determining whether or not a motion for a directed verdict should be granted. Barnes v. Thames, 578 So.2d 1155 (La.App. 1 Cir.1991); Broussard v. Missouri Pac. R. Co., 376 So.2d 532 (La.App. 3 Cir.1979). We find no abuse of discretion here with regard to the trial judge's dismissal of Cannon.
Plaintiff contends in his petition and in brief that (in an effort to convict Joseph) Officer Alonzo "perjured" himself at Joseph's criminal trial when he testified that Toni Ann Joseph (plaintiff's girlfriend, now his ex-wife) had stated that plaintiff had left their apartment for a while on the morning of the robbery becauseplaintiff urgesthat the testimony of Toni Joseph at the civil trial flatly contradicted that of Alonzo. We disagree. Alonzo testified very positively at the civil proceeding that *844 Mrs. Joseph made the statement to him, while Mrs. Joseph denied it. This is merely a contradiction of each other's testimony on a given point as often happens and, it is certainly not proof of perjury. In fact, the trial judge chose to believe Officer Alonzo.
We also find that the allegation of perjury against Officer Alonzo also has no merit whatsoever and was not proven by any evidence at trial. In the interrogatories submitted to the jury, the jury found Alonzo at fault in the amount of 48% in the "malicious prosecution which Nathaniel Joseph experienced." Under Lemire v. New Orleans Public Service Inc., 458 So.2d 1308 (La.1984), the judge was not bound by the jury's findings with regard to the suit against the City; and in his own judgment, the judge found that plaintiff had failed to prove the elements of malicious prosecution against Alonzo.
It is well settled that a court of appeal may not set aside a finding of fact by a trial court or a jury in the absence of `manifest error' or unless it is `clearly wrong,' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
* * * * * *
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.
[Citations omitted].
Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990). Also Sprueill v. Ludwig, 568 So.2d 133 (La.App. 5 Cir.1990).
Accordingly, we find no manifest error in the trial judge's determination of credibility in favor of Alonzo and heartily agree.
As with Cannon, the plaintiff utterly failed to prove the elements of malice and lack of probable cause essential to his action for malicious prosecution against Alonzo.
LSA-C.Cr.P. art. 213 states, in pertinent part:
A peace officer may, without a warrant, arrest a person when:
* * * * * *
(2) The person to be arrested has committed a felony, although not in the presence of the officer;
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer.
Acting on what certainly appeared at the time and still appears to be the honest complaint of Cannon, Alonzo was well within his statutory authority to arrest Joseph and had reasonable and probable cause to do so.
Reasonable cause to believe the person arrested has committed an offense exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable trustworthy information, are sufficient to justify an average man of caution in the belief that the person to be arrested has committed or is committing an offense. Richard v. State, through Department of Public Safety [436 So.2d 1265 (La.App.1983) ] supra; State v. Phillips, 347 So.2d 206 (La.1977). Whether reasonable cause exists is in the first instance a substantive determination to be made by the trial judge from the facts and circumstances of the case. State v. Drew, 360 So.2d 500 (La.1978).

Johnson v. State Through Dept. of P. Safety, 451 So.2d 104 (La.App. 3 Cir. 1984).
It is clear from the record on appeal that Officer Alonzo acted properly at all times in this case. He acted on the good faith complaint of a citizen in searching for and participating in the arrest of Joseph, and in his testimony at the criminal trial. The court obviously decided the credibility issue in his favor, supra, and because of *845 this there remains no basis for an action against the officer.
In the absence of any evidence to suggest that Alonzo acted intentionally and with malice, and without probable cause, to arrest or attempt to improperly secure the conviction of plaintiff, we find no manifest error in the determination of the trial judge that plaintiff failed to prove his case against Alonzo. Plaintiff's assignments of error are without merit.

B. ALLEGED NEGLIGENCE OF THE CITY RE: OFFICER THOMPSON
In his reasons for judgment, the trial court stated:
... the Court finds the City to be at fault and responsible for plaintiff's damages.
The testimony of plaintiff's expert, James D. White, a professor of criminal investigation and police operation at Florida State University, was uncontroverted and established that the City was negligent in its procedure of allowing a probationary officer to take an initial report from a victim of a crime rather than having an experienced officer to take the report.
[Emphasis added].
Initially, we note that the testimony of Dr. White was directly controverted by testimony by Detective James Steinkampt, a 24 year veteran of the New Orleans Police Department who was offered by the City and qualified by the court as an expert in the field of armed robbery investigation. Detective Steinkampt testified that the practice in this case, that of having Officer Thompson, under the general supervision of his field officer, participate in writing the initial police reports, was standard operating procedure here. There is nothing improper in this method, since the police report is essentially a simply compilation anyway of work done by the rookie (Thompson) and the field training officer. Arresting Officer Howard Martin wrote the primary supplemental report which is in far more detail and more important to the case. At the preliminary hearing Thompson did testify briefly but only to the effect that he did write the initial report; and it was Officer Martin who chiefly testified as to probable cause in the criminal case.
With regard to an action in negligence or fault under LSA-C.C. art. 2315, et seq., our Supreme Court has given us the following analysis:
We have characterized `duty-risk' analysis as the process to be employed in determining whether liability exists under the facts of a given case. In making the requisite analysis four questions are to be considered:
(1) Was the conduct in question a cause-in-fact of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Were the requisite duties breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970); Shelton v. Aetna Casualty and Surety Co., 334 So.2d 406 (La.1976); Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).

Mart v. Hill, 505 So.2d 1120 (La.1987).
In this particular case, the harm alleged by plaintiff is his arrest and trial on charges of armed robbery and the accompanying embarrassment, humiliation and mental and physical anguish he suffered. The question is then, was the procedure of allowing an initial report to be written by Officer Thompson a "rookie," a cause in fact of that harm?
At trial, Officer Alonzo testified that he was present when Mr. Cannon first reported the robbery, that he (Alonzo) took down written notes of Cannon's description and broadcast a description of the automobile and the perpetrator and then left the station to try to catch the robber. Joseph's initial detainment was based on the description Alonzo had and had broadcast; and he was arrested on the strength of Cannon's unwavering in person identification at the scene of the arrest. Thompson had remained *846 at the station with Cannon to complete the initial report.
Professor White testified that there was nothing to indicate that Thompson did not write answers given to him by Cannon. He admitted that the location of the automobile when found, the unexplained delay of the plaintiff in answering the door, and the positive identification of plaintiff were all inculpatory. Detective Steinkampt testified that the chief inculpatory fact in the documents which he reviewed was the positive identification by Cannon.
It is clear throughout these proceedings that Joseph was not arrested until after Cannon positively personally identified him at his apartment within one hour or so of the commission and the reporting of the crime. Cannon's identification was the key evidence throughout, along with the immensely strong corroborating and inculpatory evidence consisting of the location of the car with its engine still warm, the incriminating information from Steve Manning verifying that Joseph frequently wore army fatigues and a gray baseball cap like those worn by the robber, and the fact that Joseph answered the door wearing such a baseball cap one to two hours after the robbery. We are unable to find that the report written by Thompson initiated or even had anything to do with the criminal proceedings against Joseph. The report bears no relation whatsoever to Cannon's identification of the car and robber. Therefore, assuming that the City was somehow negligent in permitting Thompson to write the initial report, such negligence is positively not a cause in fact of the damages allegedly suffered by Joseph.
In addition, Alonzo himself, not Thompson, jotted down the first descriptions and information given by Cannon and this was the information broadcast by Alonzo, not Thompson; and this was also the description of Joseph which was given to Steve Manning in response to which he gave the information which led to the arrest of Joseph in the following few minutes. If there was any incorrect description of Joseph that resulted in his arrest and trial, (although we do not find this to be so) the mistake was caused by the fault of Cannon or Officer Alonzonot Officer Thompson.
Trying to pin the blame for Joseph's alleged harm on Officer Thompson also completely ignores these facts all of which had their part in Joseph's being charged with Armed Robbery and the subsequent trial:
(1) The District Attorney evaluated all the information regarding Joseph, interviewed Cannon three times and then this office filed charges of armed robbery against Joseph.
(2) Criminal District Judge Shirley Wimberly, at a preliminary hearing, and after hearing all the evidence, found that there was probable cause to arrest and charge Joseph with the armed robbery of Cannon and he further denied Joseph's motion to suppress the identification of Joseph.
If nothing else, these actions of those duly constituted legal officers of the State in the proper exercise of their duties completely exonerated Martin, Alonzo and Thompson. These decisions by the District Attorney and the judge said, in effect, that the officers had probable cause to arrest Joseph and acted correctly in so doing.
As our Supreme Court has interpreted the issue, conduct is a cause in fact of harm to another if it was a substantial factor in bringing about the harm. Thomas v. Missouri Pacific R. Co., 466 So.2d 1280 (La.1985).
This Court has found as follows:
Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm; that is, if the harm would not have occurred without it. Dixie Drive it Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). A defendant's conduct must be a necessary antecedent of plaintiff's harm but it need not be the sole cause contributing to the harm; if the plaintiff can show that he probably would not have suffered injury absent defendant's conduct, he has carried his burden of proof relative to cause in fact. Straley v. Calongne Drayage & Storage, Inc., 346 So.2d 171 (La.1977).
[Emphasis supplied].

Arthur Dooley & Sons, Etc. v. Johnson, 422 So.2d 1270 (La.App. 5 Cir.1983).
*847 For all the reasons discussed above and considering all the evidence together, we find that Joseph would have been arrested and tried for the armed robbery of Cannon whether or not Thompson had participated at all in the events. Therefore, it appears obvious that the negligence, if any, of the City relative to Thompson and the initial report of Thompson were not a legal cause of the alleged harm which plaintiff claims. Further, a review of the entire record convinces us that no negligence of any kind attributable to the City of New Orleans occurred in this case. Therefore, we hold that the trial judge committed manifest error and was clearly wrong in finding liability on the part of the City. Accordingly, that finding must be reversed.
Steve Manning and the Willows did not appeal, so the judgment is final as to them.

DECREE
For the foregoing reasons, the judgment appealed from is reversed insofar as it finds the City of New Orleans liable unto plaintiff in any manner for anything and plaintiff's action is dismissed. As a consequence, the petition for intervention must also be and is hereby dismissed. In all other respects, the judgment is affirmed. All parties are to pay their own costs.
AFFIRMED IN PART, REVERSED IN PART.