665 So.2d 542 (1995)
Laurence CONRAD
v.
John DOE and ABC Corporation.
No. 95-CA-518.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 1995.
Writ Denied February 16, 1996.
*543 H. Thomas Murphy, Metairie, for Appellant/Plaintiff Laurence Conrad.
David J. Foshee, New Orleans, for Appellees/Defendants John Doe and ABC Corporation.
Before BOWES, DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Laurence Conrad, appeals from a directed verdict and judgment dismissing his breach of contract action against defendant, R. Glenn Cater (Cater) and Cater & Willis, A Professional Law Corporation. We affirm.
Cater represented plaintiff in a medical malpractice case. In November of 1982, plaintiff was injured while working offshore and was hospitalized. While in the hospital, he telephoned Cater. Shortly thereafter, on November 30, 1982, Cater went to plaintiff's hospital room with a typed contract to represent him for his injuries. Plaintiff and Cater discussed the contract and scratched out certain portions. The finished contract provided for a contingency fee of forty percent from any recovery, and "Any costs or expenses not awarded by the court or added to a settlement will be paid by Cater and Willis." In addition, Cater agreed to advance plaintiff his living costs of $2200 per month. For some time thereafter, plaintiff was paid either maintenance and cure or workers compensation by his employer. However, there was some dispute as to whether plaintiff was a seaman. Consequently, suit was filed in federal district court under the Jones Act and general maritime law. The maintenance and cure or workers compensation payments were discontinued when the defendant-employer decided that plaintiff could return to work. Because of this loss of income, Cater increased plaintiff's advances to $2500 per month. Eventually the admiralty case was set to be tried in December of 1984.
In January of 1984, plaintiff made a loan for $30,000 at a local bank which was cosigned *544 by Cater. Plaintiff alleged that the amount was for future living expenses. Cater asserted that it was to pay him back for over $37,000 in advances which he paid to plaintiff. In addition, around this time, plaintiff agreed to allow Cater to hire another attorney to assist him with the case. According to Cater, he wanted to do so because he did not believe that plaintiff felt comfortable with him. Thus, he hired an attorney that plaintiff had worked with previously. Plaintiff testified that Cater wanted to hire the attorney because he was not a trial attorney and needed assistance.
On or about August 7, 1984, plaintiff went to the law firm of Guste, Barnett & Shushan to discuss his admiralty case. On August 7, 1984, he signed a contract for legal representation for that case with them. He also requested living expenses from them of $600 per month. Plaintiff asserted in trial that he went to the firm to find assistance for Cater in light of the conversation which he alleged occurred in January. However, he did not inform Cater of these events.
Cater discovered plaintiff's actions when he was contacted by the Guste firm and informed that they would be taking over the representation. Cater then sent the file to the Guste firm and they in turn sent Cater both a document setting forth a proposed fee division in the event of recovery and a motion to withdraw as counsel. According to Cater, before he signed the withdrawal, he received a telephone call from the Guste firm asking him to wait, because they were not sure that they were going to take the case. Plaintiff testified that the firm declined the case because William Guste's wife was about to have a baby and he did not have the necessary time to work on the case. Plaintiff then went back to see Cater on September 10, 1984. At that time, a second contingency fee contract was drafted and signed by the parties. This contract provided for a contingency fee of one-third, to be deducted from any recovery, and plaintiff was to bear all court costs and expenses. Various items of expenses and costs were listed, including advances. The contract also declared that plaintiff reviewed the ledger sheets reflecting the costs incurred in pursuing the litigation and advances made to him, as attached to the contract. The provision also stated that plaintiff agreed that those amounts, plus future expenses and advances were to be deducted from any recovery. According to Cater, the new contract had different terms because he believed that plaintiff had fired him and rehired him. In addition, he was not sure whether plaintiff would fire him again, even though the trial was two months away. Plaintiff stated that he had not fired Cater and that the only reason he signed the new contract was because he needed living expense money.
The admiralty case went to trial in December of 1994. The jury awarded plaintiff $530,000, which included $100,000 in punitive damages. The federal magistrate reduced the punitive portion of the award by $50,000, but awarded pre-judgment interest. The value of the award was $512,000 and both parties contemplated appealing the judgment. Then, negotiations for settlement commenced. In February of 1985, Cater requested written authority from plaintiff to settle the case for $510,000. This document also states that plaintiff reviewed the ledger sheets and approved the guarantees and expenditures of $100,000 on his behalf. It reiterated that the attorney fees would be one-third of the total recovery and that by settling for $510,000 he would recoup $240,000. The agreement also acknowledged receipt of $1000 paid to plaintiff that day, which was to be deducted from his net recovery, leaving a total of $239,000 to him. This disbursement was based on the September 10, 1984 fee contract. Plaintiff testified that he disagreed with the proposed disbursements because he did not want to pay costs and expenses. Thus, he required Cater to handwrite an addendum, which states:
If this case is not settled for five hundred ten thousand ($510,000.00) within ten days of February 14, 1985, this authority is void unless extended by both parties. If this case is not settled for five hundred ten thousand ($510,000.00) within ten days then any settlement, including any court costs fixed by the court will be governed by the original contract between Lawrence Conrad and Cater & Willis.
*545 Cater contended at trial that he did not agree with this addendum. He believed that the original contract was voided when the second contract was confected. Cater also said that he explained to plaintiff that the second contract was more beneficial to him, but plaintiff insisted that he include the addendum to the authorization. Thus, Cater refused to sign it.
The case was not resolved until after the ten day period noted in the authorization. However, shortly after, defendant agreed to pay plaintiff the amount of the original judgment, $512,000. Cater received one check made out to him for $25,000 and two checks made out to both plaintiff and himself for the remainder. Cater presented plaintiff with a disbursement statement based on the fee contract of September 10, 1984. Plaintiff signed the disbursements in two places expressing his satisfaction with his attorneys and relieving them of any further financial responsibility. After cashing the checks, plaintiff directed Cater to give him approximately $500 cash and to wire the rest to his bank account (a joint account with him and his wife) in Oregon. Unfortunately, plaintiff's wife apparently spent the money without his knowledge.
On October 14, 1987, plaintiff filed a breach of contract suit against defendants. He alleged that his dire financial circumstances forced him to accept the disbursements under the second contract. He further contended that the addendum to the authorization was a valid contract. If not, then Cater owed him the expenses based on the original contract from then until execution of the second contract. He asserted that if the trial court found both contracts void, he was owed repayment of the expenses based on quantum meruit.
From 1987 until trial on the merits in 1994, the parties filed various exceptions and motions. At different times, plaintiff confirmed a default against defendants and defendants were granted a summary judgment against plaintiff. Both were reversed on appeal. The case was finally tried before a jury on November 14 and 15, 1994. At the end of plaintiff's case, defendants made an oral motion for a directed verdict under La.C.C.P. art. 1810. The trial judge granted the motion and dismissed plaintiff's case in a judgment signed on November 18, 1994.
On appeal, plaintiff asserts that the trial judge erred in granting the directed verdict. He contends that the addendum to the authorization dated February 13, 1984 was a valid contract. Since the case was not settled until after ten days, the disbursements should have been made according to the original contract. Consequently, plaintiff concludes, he was not liable for expenses and costs and Cater owes him a refund of $70,000. In addition, plaintiff contends that those expenses included medical expenses and advances.
Defendants contend that Cater did not agree to the addendum. Therefore, there was no contract to disburse the proceeds according to the addendum. Defendants also assert that plaintiff's credibility in regard to these matters was impeached when Cater showed that plaintiff changed his version of the events in testimony at a prior hearing, and in his affidavit submitted in opposition to an earlier motion for summary judgment. He also contends that plaintiff made accusations against Cater that, at trial, he admitted were untrue.
La.C.C.P. art. 1810 provides as follows:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
The mover is entitled to a motion for a directed verdict when, after considering all of the evidence in the light and with all reasonable inferences most favorable to the movant's opponent, it is clear that the facts and inferences point so overwhelmingly in *546 favor of granting the verdict, that reasonable jurors could not arrive at a contrary verdict. Joseph v. Cannon, 609 So.2d 838, 843 (La. App. 5 Cir.1992); Belle Pass Terminal, Inc. v. Jolin, Inc., 92 1544 (La.App. 1 Cir. 3/11/94), 634 So.2d 466, 477-478; Adams v. Travelers Insurance Company, 589 So.2d 605, 608 (La.App. 2nd Cir.1991); Armstrong v. Lorino, 580 So.2d 528, 533 (La.App. 4th Cir.), writ denied, 584 So.2d 1166 (La.1991); Barnes v. Thames, 578 So.2d 1155, 1162 (La. App. 1st Cir.), writs denied, 577 So.2d 1009 (La.1991). However, if there is evidence produced in opposition to the motion that has such quality and weight that reasonable and fair-minded men exercising impartial judgment might reach different conclusions, then the motion should be denied and the case should be submitted to the jury. Joseph v. Cannon, 609 So.2d at 843; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 478.
The trial judge has much discretion in determining whether or not to grant a motion for directed verdict. Joseph v. Cannon, 609 So.2d at 843; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 478. In reviewing the granting or denial of a motion for directed verdict, the appellate court applies the standard of whether, viewing the evidence submitted, reasonable people could not reach a contrary verdict. Joseph v. Cannon, 609 So.2d at 843; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 478. In addition, the appellate court evaluates the propriety of a directed verdict in light of the substantive law related to the claims. Joseph v. Cannon, 609 So.2d at 843; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 478; Adams v. Travelers Insurance Company, 589 So.2d at 608.
A contract is an agreement by two or more parties, whereby obligations are created, modified or extinguished. La.C.C. art. 1906. In order to form a contract, there must be an offer and acceptance. La.C.C. art. 1927. Unless the law requires otherwise, an offer and acceptance may be made orally, in writing or by action or inaction that under the circumstances is clearly indicative of consent. Id. A valid contract is the law between the parties. La.C.C. art. 1918. The party demanding performance of a contract must prove the existence of the contract. La.C.C. art. 1831.
In this case, plaintiff asserts that he had a contract with Cater to apply the original agreement, if the admiralty case did not settle within ten days of the authorization date. Since the case did not settle until after the ten day period expired, he contends that Cater owes him repayment of the expenses under the first contract. However, Cater testified that he did not agree to those conditions, nor did he sign that document. In addition, plaintiff accepted disbursement of the proceeds of the settlement. He accepted the money, directed Cater to give him a small portion and instructed him to wire the rest to his joint account. Plaintiff furthermore signed in two places the disbursement document, showing how the disbursements were made to defendants for attorney fees and repayment of costs and expenses. The second signature reflected his satisfaction with the disbursements and released defendants from all further financial liability. Although plaintiff admits that he signed the release and satisfaction, he claimed that he did so because he needed the money. However, Cater had been paying plaintiff his living expenses.
After our review of the entire record, we conclude that the addendum to the authorization was not a contract between the parties. The evidence shows that Cater did not agree to the handwritten conditions placed on the authorization to settle. In addition, we find that plaintiff was not under duress or coercion when he acquiesced in the distribution of the proceeds under the second contract. Consequently, the proceeds of the settlement were properly disbursed according to the second agreement.
Furthermore, the evidence shows that plaintiff fired Cater in August of 1984. Although plaintiff denied terminating Cater, his credibility was seriously impeached by the contradictory statements he made in proceedings prior to the trial in this case. Because Cater was fired, the original contract no longer existed, other than to allow Cater to collect his proportionate share of any fee paid to the new attorney from ultimate recovery. *547 When plaintiff rehired Cater, the second contract became the new agreement governing the payment of attorney fees, costs and expenses. Considering the evidence in this case, in the light and with all reasonable inferences most favorable to the movant's opponent, it is clear that the facts and inferences point so overwhelmingly in favor of granting the directed verdict, that reasonable jurors could not arrive at a contrary verdict. Therefore, we find that the trial judge did not abuse his discretion in granting the directed verdict.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of appeal are assessed against plaintiff.
AFFIRMED.