731 So.2d 335 (1999)
Edward GUILLOT and Shelly Guillot d/b/a Miss Jefferson Parish Beauty Pageant
v.
Lynne WAGNER d/b/a Lynne Wagner Productions and Karen Satalamachia d/b/a KAS Productions, Inc.
No. 98-CA-840.
Court of Appeal of Louisiana, Fifth Circuit.
February 10, 1999.
*336 John J. Lee, Jr., New Orleans, Louisiana, Attorney for Plaintiff/Appellant.
Ernest E. Barrow, II, Gretna, Louisiana, Attorney for Defendant/Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and THOMAS F. DALEY.
DALEY, Judge.
This is an appeal by the plaintiffs from the granting of defendants' motion for directed verdict by the trial court. For reasons assigned, we affirm.

FACTS
The plaintiffs filed a petition for an injunction against the defendants Lynne Wagner d/b/a Lynne Wagner Productions and Karen Saltalamachia d/b/a KAS Productions, Inc. The petition sought to prohibit the defendants from using, displaying or transacting business under the names of "Miss Jefferson Parish Pageant," "Miss Metairie Pageant," or "Miss Westbank Pageant." The petition alleges that plaintiffs are the current owners of the "Miss Jefferson Parish Scholarship Pageant," which has operated in Jefferson Parish since 1982 under the name of "Miss Jefferson Parish." Plaintiffs allege that these names have been registered with the Secretary of State and were acquired by plaintiffs from the original owners by a purchase agreement dated September 16, 1996. Both parties are engaged in staging beauty pageants in Jefferson Parish. Plaintiffs allege that they have received phone calls from potential participants expressing confusion as to a new "Miss Jefferson Parish Pageant."
At the hearing on this matter, plaintiff, Shelly Guillot, testified that she purchased the pageants in September 1996 from the previous owners Lisa and Ann Anderson, who staged the pageants since 1982. Ms. Guillot explained that Denise Isabel had purchased the pageants in the interim, but defaulted on the purchase agreement, so the pageants again became the property of the Andersons. Several documents were introduced during Ms. Guillot's testimony which indicate the pageants she purchased were advertised as "Miss Jefferson Parish Pageant." In 1997, Ms. Guillot began using the name "Miss Jefferson Parish Scholarship Pageant," explaining that this was done to attract more contestants and that she never intended to discontinue using "Miss Jefferson Parish Pageant." After staging the pageants as "Miss Jefferson Parish Scholarship Pageant" in 1997, Ms. Guillot became aware that the defendants had registered the names "Miss Jefferson Parish," "Miss Metairie," and "Miss Westbank" with the Secretary of State. Ms. Guillot explained that she "panicked" and registered her pageants as "Miss Jefferson Scholarship Pageant," "Miss Westbank Scholarship Pageant," and "Miss Metairie Scholarship Pageant." She reiterated that she never intended to stop using the "Miss Jefferson Parish Pageant," "Miss Westbank Pageant," and "Miss Metairie."
In addition to acquiring ownership of the pageants, Ms. Guillot had also been a contestant in the various pageants over the years. She testified that there would be a lot of confusion if there were two Miss Jefferson Parish Pageants because "there's always been one."
Ms. Heather Blake also testified for plaintiffs. Ms. Blake has been a contestant in beauty pageants for the past twelve years. She testified that the winner of the Miss Jefferson Parish Pageant is the official representative of the parish in her category and represents the parish at parades. Ms. Blake testified that if she were considering entering a pageant and was faced with two pageants having similar names, she would make an inquiry into the ownership and reputation of both pageants. The pageant she would choose to *337 enter would be based on whether it was a "feeder" for a larger pageant, such as Miss Louisiana. Ms. Blake also testified that she would not be confused about two pageants with similar names as a contestant, but may be confused about the two pageants if she were a spectator.
At the close of plaintiffs' case, the defendants moved for a directed verdict stating that the plaintiffs had not put on sufficient evidence to prove they are entitled to an injunction. The defendants argued that in order to prevail, the plaintiff must prove there would be confusion among consumers over the two similar names. The trial judge granted the directed verdict holding that the testimony indicated that the participants would make inquiries as to which pageant had the best reputation and would be more likely to enter the plaintiffs' pageant.
The plaintiffs have appealed alleging the trial court erred in granting the directed verdict and in not granting the injunction.

DISCUSSION
A directed verdict should be granted when all the evidence is considered in the light most favorable to the opponent, it is clear that all the facts and inferences are so overwhelmingly in favor of the moving party that reasonable minds could not arrive at a contrary verdict. Conrad v. Doe, 95-518 (La.App. 5th Cir. 11/28/95), 665 So.2d 542. The trial judge's decision to grant a directed verdict is given much discretion. Id. The standard of review for a directed verdict on appeal is, after viewing the evidence submitted, whether reasonable people could not reach a contrary verdict. Newpark Resources, Inc. v. Marsh & McLennan of Louisiana, Inc., 96-0935 (La.App. 1st Cir. 2/14/97), 691 So.2d 208. The appellate court must evaluate the propriety of a directed verdict in light of the substantive law related to plaintiff's claims. Id.
Louisiana law recognizes a cause of action for infringement of trade names and remedies as part of the law of unfair competition. Alliance for Good Government, Inc. v. St. Bernard Alliance for Good Government, Inc., 96-0635 (La.App. 4th Cir. 12/18/96), 686 So.2d 83. In an action for trade name infringement, the primary issues are "(1) whether the party seeking the injunction has a protectable proprietary right in the name it seeks to exclude others from using, and (2) if so, whether there has been an infringement of that right." Gulf Coast Bank v. Gulf Coast Bank & Trust Co., 94-2203 (La.4/10/95), 652 So.2d 1306 at 1309. In order to prevail in an action in trade name infringement, the plaintiff must show that there is a likelihood of consumer confusion created by the defendant's use of the trade name. Id. at 1308.
The best evidence of the likelihood of confusion is actual confusion; proof of actual confusion "probably requires a finding of the likelihood of confusion even in the absence of other proof." Seafood Restaurant Services, Inc. v. Bonanno, 95-0058, (La.App. 1st Cir. 11/9/95), 665 So.2d 56 at 60. The other factors relevant to proving the likelihood of consumer confusion include similarity of products, identity of retail outlets and purchasers, identity of advertising media, strength or distinctiveness of the mark or name, defendant's intent and similarity of design. Id. All of these factors may not be relevant in every case and there may be other factors which may be relevant, depending on the circumstances of each case. Falcon Rice Mill, Inc. v. Community Rice Mill, Inc., 725 F.2d 336, 345 n. 3 (5th Cir.1984).
Applying these factors to the case before us, the two products, i.e., beauty pageants, are identical. The purchasers are contestants and audience members. While there was testimony by Ms. Blake that she would not be confused over the two pageants as a contestant, there was no testimony from audience members as to whether there would be confusion over the two pageants. There was no testimony as to which advertising media were used by the two pageants. Likewise, there was no *338 testimony regarding similarity of the way in which the two pageants are conducted. The only testimony as to actual confusion came from the plaintiff herself. Thus, the plaintiff did not carry her burden of proving likelihood of consumer confusion. Accordingly, the trial judge correctly granted the defendant's motion for directed verdict.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.