760 So.2d 1273 (2000)
Bobby JOHNSON
v.
Harry LEE, et al.
No. 00-CA-78.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2000.
*1274 Bruce W. Harris, New Orleans, Louisiana, Counsel for plaintiff-appellant.
*1275 Pierre M. Legrand, Tiffany G. Chase, Ungarino & Eckert, Metairie, Louisiana, Counsel for defendant-appellee.
Court composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS and THOMAS C. WICKER, Judge Pro Tempore.
McMANUS, Judge.

STATEMENT OF THE CASE
Plaintiff-Appellant Bobby Johnson appeals a trial court judgment granting defendant Arrowhead Security Services Inc.'s Motion for Directed Verdict and/or Involuntary Dismissal and dismissing his tort suit for damages for injuries he alleged that he sustained in an altercation with security guards and a deputy at the Villa d' Ames apartments. For the following reasons, we affirm.
On December 15, 1997, plaintiff Bobby Johnson filed a Petition for Damages against defendants Sheriff Harry Lee, in his capacity as Sheriff of Jefferson Parish and the Archdiocese of New Orleans[1], for damages that he suffered from his altercation with Deputy John P. Batiste and the security guards at the Villa d' Ames apartments. On February 17, 1998, the Roman Catholic Church of the Archdiocese of New Orleans (hereafter Roman Catholic Church) filed a Motion for Summary Judgment averring that it was not liable for Mr. Johnson's injuries because it does not own Villa d' Ames. Mr. Johnson filed an amended petition on February 27, 1998, naming as defendants, appellee, Arrowhead Security Services, Inc. of Louisiana (hereafter Arrowhead), and Villa d' Ames, Inc. On March 3, 1998, the trial court granted the joint Motion to Dismiss the Roman Catholic Church filed by Bobby Johnson and the Roman Catholic Church. On March 20, 1998, Arrowhead filed a cross claim against the Jefferson Parish Sheriffs Office, Villa d' Ames, Inc., and the Roman Catholic Church, however, Arrowhead later filed a Motion to Dismiss the Roman Catholic Church which was granted by the trial court on April 3, 1998. On August 11, 1998, Villa d' Ames, Inc. filed a Motion for Summary Judgment requesting to be dismissed from the suit because the Arrowhead security guards were not its employees. On October 30, 1998, the trial court granted Villa d' Ames's Motion for Summary Judgment and dismissed it from the suit with prejudice. Before trial, Mr. Johnson entered into a settlement agreement with the Jefferson Parish Sheriffs Office, and the trial court dismissed the Jefferson Parish Sheriffs Office from all claims. A bench trial was held on November 8, 1999. At the conclusion of Mr. Johnson's evidence, Arrowhead filed for an involuntary dismissal on the grounds that Mr. Johnson failed to establish a prima facie case. On November 12, 1999, the trial court signed the judgment granting Arrowhead's Motion for Directed Verdict and/or Involuntary Dismissal. Mr. Johnson was granted an appeal on November 19, 1999.

TESTIMONY
At trial, Mr. Johnson testified that on or about December 16, 1996, he was in the Villa d' Ames apartment complex attempting to buy cigarettes from a woman in building 12. As Mr. Johnson was about to proceed to the woman's second floor apartment, he was approached by two security guards. When Mr. Johnson attempted to leave the complex, the two guards chased him. Mr. Johnson testified that he ran outside the fenced area by the gate where the two guards allegedly threw him on the ground and kicked him. Mr. Johnson testified that the security guards allegedly beat him for 15 minutes.
Mr. Johnson testified that the security guards called the Jefferson Parish Sheriff's *1276 Office. According to Mr. Johnson, when Deputy John P. Batiste arrived on the scene, he joined the security guards in beating Mr. Johnson. Mr. Johnson claims that Deputy Batiste cuffed his hands behind his back and began to continuously kick him. Deputy Batiste pulled Mr. Johnson's hand-cuffed wrists, and picked him up and down repeatedly until he broke Mr. Johnson's left arm.
At trial, Mr. Johnson was impeached by his deposition and medical records regarding his inconsistent versions of how he broke his left arm. Mr. Johnson testified that Deputy Batiste broke his arm and that the security guards injured his forehead, however, Mr. Johnson further testified that the security guards might have broken his arm for all that he knew because they pulled him from the fence and threw him down on the concrete pavement. Mr. Johnson testified that he was injured solely by Deputy Batiste and the security guards, however, the medical records reflect that he told the doctor at the prison that he had been struck on his elbow three weeks prior to his arrest. Mr. Johnson also told another one of his treating physician that he broke his arm when he was struck with a two-by-four in an altercation. Mr. Johnson explained that he lied to his treating physicians because he was afraid that he would never receive medical treatment if he told them that Deputy Batiste broke his arm. However, at his deposition, Mr. Johnson testified that he told the staff at the Medical Center of Louisiana in New Orleans the truth about his injuries.
The medical records from the Jefferson Correctional Center dated December 17, 1996, reflect that there was an abrasion over Mr. Johnson's left eye and his elbow was swollen and tender. It was noted on the chart that the left elbow appeared septic in the joint. Mr. Johnson related that he was hit in the elbow three weeks prior to his arrest.
Mr. Johnson's medical records reflect that he was admitted to the Medical Center of Louisiana in New Orleans on December 19, 1996. The records further reflect that Mr. Johnson told his treating physicians that he was involved in an altercation in which he was struck by a board on the left elbow two weeks prior to his admission. On December 24, 1996, Mr. Johnson had an open reduction internal fixation of the left olecranon fracture.
Mr. Johnson testified that he went over to the Villa d' Ames apartment complex, despite the fact that he was asked to refrain from coming onto the premises, because his mother in law, who is elderly, needed his assistance. Mr. Johnson admitted that he was aware that the area around Villa d' Ames apartment complex is a high drug crime area and that he knows the first name of several drug dealers. The record reflects that Mr. Johnson had previously pled guilty to possession of cocaine, conspiracy to sell marijuana, aggravated battery, robbery and larceny.

INVOLUNTARY DISMISSAL
At the end of trial, Arrowhead made a Motion for Involuntary Dismissal and/or a Motion for Directed Verdict. Arrowhead argued that Mr. Johnson failed to establish his case by a preponderance of the evidence and Mr. Johnson lacked credibility. The trial court granted Arrowhead's Motion for Directed Verdict and/or Involuntary Dismissal.
On appeal, Mr. Johnson argues that the trial court erred in ruling that he failed to meet the burden of proof that is required to establish his claim by a preponderance of the evidence and the trial court committed manifest error in granting Arrowhead's Motion for Directed Verdict and/or Involuntary Dismissal. Arrowhead responds that the trial court correctly granted the motion for involuntary dismissal because Mr. Johnson's account of the incident is riddled with inconsistencies and he failed to establish, beyond a preponderance of the evidence, who broke his arm and beat him.
*1277 On motion for directed verdict and for judgment, notwithstanding the verdict, the court should consider all of the evidencenot just that evidence which supports the non-mover's casein the light and with all reasonable inferences most favorable to the party opposed to the motion. Joseph v. Cannon, 609 So.2d 838, 843 (La.App. 5 Cir.1992), writ denied, 623 So.2d 1330 (La.1993)(citing Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969)). If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. Joseph v. Cannon, 609 So.2d at 843. If the facts and inferences is evidence produced in opposition to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions, then the motion should be denied, and the case should be submitted to the jury. Joseph v. Cannon, 609 So.2d at 843.
LSA-C.C.P. art.1672(B) provides that any party in a bench trial may move for an involuntary dismissal if it is shown that the plaintiff is not entitled to relief once he has presented his evidence. The appropriate standard for the trial court to use to determine the merits of the motion to dismiss is whether the plaintiff has presented sufficient evidence to establish his case by a preponderance of the evidence. Yoes v. Shell Oil Co., 95-12 (La.App. 5 Cir. 5/10/95), 657 So.2d 241, 251, writ denied, 95-2087 (La.11/17/95), 663 So.2d 714. Proof by a preponderance of the evidence means that, taking the evidence as a whole, such proof shows that a fact sought to be proven is more probable than not. Brown v. Bowler, 94-667 (La.App. 5 Cir. 5/10/95), 659 So.2d 799, 802. In non-jury trials, the appropriate standard for the trial court's determination of a motion to dismiss pursuant to art. 1672(B) is whether the plaintiff has presented sufficient evidence to establish his claim by a preponderance of the evidence. 2304 Manhattan Blvd. Partnership v. Louisiana Power & Light Co., 94-192 (La.App. 5 Cir. 9/14/94), 643 So.2d 1282, 1284-1285. The standard of review on appeal of factual findings of the trial court on a motion for involuntary dismissal is whether the trial court committed manifest error. Catalano v. Roberts, 94-635 (La.App. 5 Cir. 1/18/95), 650 So.2d 330, 332. Therefore, our review of the trial court's determination is based on whether or not there is manifest error. 2304 Manhattan Blvd. Partnership, 643 So.2d at 1284-1285. The issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880, 882 (La.1993).
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. Rosell v. ESCO, 549 So.2d 840, 844. Only the factfinder can be aware of the variations in demeanor and tone of voice that bear heavily on the listener's understanding and belief in what is said. Id. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the Court of Appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Id. at 845. But where such factors are not present and a factfinder's finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id.
After the trial court heard the plaintiffs evidence, it concluded that the plaintiff could not meet its burden of establishing his claim by a preponderance of the evidence. Since the only evidence presented to this Court regarding causation was Mr. Johnson's testimony and the trial court did not find him credible, we cannot say that *1278 the trial court's judgment granting Arrowhead's Motion for Involuntary Dismissal was manifestly erroneous. Accordingly, we affirm the trial court's judgment.
AFFIRMED.
NOTES
[1] The proper party name is the Roman Catholic Church of the Archdiocese of New Orleans.