LANIER, Judge.
This is a suit for damages in tort by guest passengers in an automobile that was struck head-on by another vehicle. Made defendants were the driver of the other vehicle, the Parish of East Baton Rouge (Parish) and the Parish’s insurer. The driver of the other vehicle did not answer or make an appearance, and the guest passengers entered a preliminary judgment by default against him. After a trial, the district court determined that the other driver was 80% at fault for failing to maintain proper control of his vehicle and the Parish was 20% at fault because the “drastic drop” from the roadway to the shoulder of the Parish’s road contributed to the accident. Judgments totaling $418,900 were rendered in favor of the guest passengers against the other driver, the Parish *34 and the Parish’s insurer. The Parish and its insurer took separate suspensive appeals. The guest passengers answered the appeal asking for increases in the damage awards and certain expert witness fees and seeking expert witness fees for persons for whom expert fees were not granted. The other driver has not appealed or answered the appeal.
FACTS
The automobile collision occurred at approximately 12:00 midnight on July 12, 1982, in the 3200 block of Blount Road in East Baton Rouge Parish. Blount Road is in the custody of the Parish. At this location, Blount Road is a relatively narrow, two-lane paved roadway which has little or no shoulder on either side. In February of 1982, Blount Road was overlaid by the Parish with asphalt because of severe potholes in the roadway. The shoulders were not raised to the level of the new roadway, and this caused a drop-off between the roadway and shoulder of four to six inches.
The accident occurred on a clear night close to midnight. Lottie Lee Roberson and four of her children were guest passengers in a vehicle being driven by Joseph Mealey. Mealey was proceeding in an easterly direction on Blount Road in a safe and reasonable manner. Darrell Huggins was proceeding in a westerly direction on Blount Road at this same time and place and these two vehicles collided.
Huggins was not seriously injured in the collision. Lottie Lee Roberson and her four children sustained various injuries. The trial court gave the following damage awards:
(1) Willie Sanford $ 900
(2) Chaney Sanford 4,000
(3) Janice Roberson 2,000
(4) Jeannie Roberson 12,000
(5) Lottie Lee Roberson 400,000
TOTAL $418,900
The trial court also awarded expert witness fees of $100 to Hibbett Neel and Joseph Andre.
The Parish was insured by the Fidelity and Casualty Company of New York (Fidelity).
LIABILITY OF THE PARISH
The Parish and Fidelity contend the trial court committed error by finding as a fact the drop-off between the roadway and the shoulder of Blount Road (the defect) caused the accident. They contend the accident was caused solely by the intoxication and failure to maintain proper control of Huggins. (The Parish and Fidelity do not contest the factual findings that the four to six-inch drop-off constituted a defect or that the Parish had legal custody of the road.)
The plaintiffs contend the Parish and Fidelity are at fault under the negligent liability of La.C.C. art. 2315 and the strict liability of La.C.C. art. 2317. Under the strict liability of La.C.C. art. 2317, a plaintiff bears the burden of proving three things: (1) the thing which caused damage was in the custody of the defendant; (2) the thing was defective (created an unreasonable risk of injury); and (3) the injury was caused by the defect. Jones v. City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 (La.1980); Loescher v. Parr, 324 So.2d 441 (La.1975). The only difference between the negligent liability of La.C.C. art. 2315 and the strict liability of La.C.C. art. 2317 is the element of proof of the defendant’s scienter. In negligent liability, the plaintiff must show the defendant either knew or should have known of the defect, whereas under strict liability, the plaintiff is relieved of proving this element. The duty imposed on a defendant under either strict liability or negligent liability is the same. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982); Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983). Thus, in the instant case, under either La.C.C. art. 2315 or La.C.C. art. 2317, the Parish owes a duty to the traveling public to maintain the roadway and the shoulder of a highway in a reasonably safe condition for vehicular use. LeBlanc v. *35 State, 419 So.2d 853 (La.1982); Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979). Under either theory of recovery, the plaintiffs must prove that a defect in the roadway or shoulder caused the injuries of the plaintiffs. Cf. F & S Offshore, Inc. v. Service Machine & Shipbuilding Corporation, 430 So.2d 1167 (La.App. 1st Cir.1983); Dye v. Kean’s, 412 So.2d 116 (La.App. 1st Cir.1982), writ denied, 413 So.2d 506 (La.1982).
The trial court made the following factual findings on the issue of cause in fact:
Obviously, defendant Huggins was severely negligent in failing to maintain proper control of his vehicle, but even a sober and careful driver would have had oversteering problems at this particular location when he attempted to return to the road surface. In order to return to the main travelled portion of the highway once a motorist has left that portion, a sharp turn to the left or oversteering would be necessary. This oversteering by Huggins was partially the reason why he wound up in the lane of the .oncoming traffic.
[Emphasis added.]
In brief the plaintiffs assert that Huggins lost control of his vehicle “when he left the paved portion of the roadway and struck the defective shoulder”, and Huggins “then oversteered in an attempt to re-enter the roadway.”
Huggins did not appear for the trial, and his testimony was presented by deposition. In reviewing this deposition testimony, we are not bound by the “manifest error — clearly wrong” standard of review. Hayes v. Commercial Union Assurance Company, 459 So.2d 1245 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1247 (La.1985). Huggins testified that on Sunday, July 11, 1982, he was returning to his home in Zachary, Louisiana, from a visit with relatives in Cheneyville, Louisiana. He turned off Plank Road and proceeded in a westerly direction on Blount Road. It was around midnight, and he was driving between 30 and 50 miles per hour. He hit some dips in the road, and it appeared to him that an oncoming vehicle was in his lane of travel. (The evidence shows and the trial court correctly held as fact that Joseph IVIealey was driving the oncoming vehicle in a safe and reasonable manner.) Huggins pulled to the right of the roadway, and the front and back tires on the right side of his vehicle went off of the roadway and into the ditch. He traveled that way for a while and could not get back control like he wanted to. He saw a telephone pole and tried to keep his vehicle between the pole and the oncoming vehicle. Huggins did not have control of his vehicle when he came out of the ditch just before he hit the other vehicle. Huggins testified without objection that he was charged with DWI and pled guilty to the charge. (The deposition was introduced into evidence without objection.) Huggins admitted drinking approximately 15 beers from 11:00 a.m. to 11:00 p.m. However, he felt this did not contribute to the accident. Huggins was partially off of the roadway going about 45 or 50 miles per hour when he took his foot off of the accelerator and let the vehicle coast. At an unspecified point, he hit his brakes.
Ernest Tully testified he was employed as a police officer with the Baton Rouge Police Department and investigated the accident. He arrived at the scene of the accident at 12:18 a.m. on July 12, 1982. The night was clear. He observed the two vehicles involved in the accident pointing in a southerly direction and located in the ditch on the south side of the roadway. Tully found a gouge mark in the eastbound lane of travel that he determined to be the point of maximum engagement of the two vehicles. The gouge mark was located four feet ten inches north of the south edge of the roadway. Blount Road has two lanes of asphalt. The roadway edges are marked with painted white lines, and there are solid double yellow lines down the middle. There is a small dirt shoulder (less than one and one-half feet) with some shells on it. Officer Tully observed wheel ruts off of the roadway on its north side *36 (adjacent to the westbound lane in which Huggins was traveling). Tully measured the distance from the point of maximum engagement to the point where the ruts first appeared off of the roadway and found it to be 295 feet 7 inches (254'5" from the beginning of the ruts to a double tree and 41'2" from the double tree to the point of impact). The first rut looked like a one wheel drop-off that ran off of the road for about 15 feet and came back to the roadway. A short distance further, a second rut came off of the roadway and ran a little bit longer than the first rut. This also appeared to be one set of wheels on the right side of the vehicle. This rut returned to the roadway. At a further unspecified distance, a third set of ruts left the roadway and it looked like the whole car left the roadway or the tail end of the vehicle spun around causing furrows. At one point, these ruts were approximately 14 feet off of the roadway. Huggins admitted to Tully at the scene that his vehicle left the roadway. The speed limit was 45 miles per hour. There was water in the north roadside ditch and fresh mud was thrown onto the roadway where the vehicle came back on the roadway for the last time. Tully observed no evidence of braking.
The guest passengers had the accident scene surveyed by a civil engineer and filed the survey into evidence. The survey indicates that the average width of the roadway of Blount Road is 19 feet 4 inches. On the north side of Blount Road, there is an average drop of 1.3 feet from the edge of the roadway over a distance of 4 feet out. At a distance of approximately 4 feet out from the north edge of the roadway, the ground either levels off or commences to rise slightly to form a swale ditch. A chain link fence around a tank farm is located approximately 30 feet north of the edge of the roadway. A telephone pole is located approximately 15 feet north of the roadway at a point approximately 127 feet east of the point of impact (or 168 feet west of the place where the tire ruts started).
The testimony of Huggins and the physical evidence indicate Huggins erroneously perceived an oncoming vehicle in his lane of travel, weaved on and off the roadway three times, attempted to steer his vehicle between the roadway and a telephone pole located 15 feet off the roadway, lost control of his vehicle while attempting this maneuver and reentered the roadway and struck the oncoming vehicle in its proper lane of travel. The evidence fails to show that the drop-off between the roadway and the shoulder caused Huggins to lose control. Cf. Pitre v. Aetna Insurance Company, 456 So.2d 626 (La.1984). Huggins admitted drinking 15 beers and judicially confessed he was driving while intoxicated. In this condition, he erroneously perceived a vehicle in his lane of travel and undertook an evasive maneuver in the roadside ditch between the roadway and a telephone pole. During this maneuver, he lost control of his vehicle and caused the accident. In Holmes v. State, Department of Highways, 466 So.2d 811, 821 (La.App. 3rd Cir.1985), writ denied, 472 So.2d 31 (La.1985), appears the following:
In sum, we conclude that the Highway Department’s duty to maintain a safe shoulder does not encompass the foreseeable risk of injury to a motorist who strays completely off the travel portion of the highway because his driving ability is impaired by reason of intoxication, particularly when the principles announced in Rue, supra, are considered in light of the later legislative enactment of our comparative negligence law. In Sin-itiere v. Lavergne, supra, our Supreme Court was careful to point out that, although a motorist has a right to assume that highway shoulders are maintained in a reasonably safe manner, this concept does not “ ... establish the highway shoulders as a ‘zone of recovery’ for every straying motorist.”
The trial court committed error in concluding the defective drop-off between the roadway and the shoulder caused Huggins to lose control of his vehicle on reentering the roadway.
This assignment of error has merit.
*37 DECREE[1]
For the foregoing reasons, the judgment of the trial court against the Parish and Fidelity is reversed and judgment is rendered in their favor dismissing the plaintiffs petition against them with prejudice. The plaintiffs are cast for the cost of this appeal.
REVERSED.
EDWARDS, J., dissents and will assign reasons.

. The errors assigned in the answer to the appeal by the plaintiffs-appellees will not be addressed because the appellants have been successful in their appeal. The plaintiffs’ answer to the appeal does not have the effect of an appeal to any portion of the judgment affecting a party who is not an appellant. Jacoby v. State, 434 So.2d 570 (La.App. 1st Cir.1983), writ denied, 441 So.2d 771 (La.1983).