643 So.2d 1282 (1994)
2304 MANHATTAN BOULEVARD PARTNERSHIP
v.
LOUISIANA POWER & LIGHT COMPANY.
No. 94-CA-192.
Court of Appeal of Louisiana, Fifth Circuit.
September 14, 1994.
*1283 Steven Dow Oliver Windhorst, Gaudry, Ranson, Higgins & Gremillion, Gretna, for plaintiff/appellant.
Eugene G. Taggart, Robert E. Rougelot and Ann E. Levine, Monroe & Lemann, New Orleans, for defendant/appellee.
Before GAUDIN, GOTHARD, JJ., and THOMAS F. DALEY, J. Pro Tem.
GOTHARD, Judge.
2304 Manhattan Boulevard Partnership (Manhattan), owner of an apartment building in Harvey, Louisiana, filed this action against Louisiana Power and Light Company (LP & L) for damages sustained when three of eight air conditioning units at the site were damaged, two irreparably. On October 8, 1993 the matter went to trial in Second Parish Court for the Parish of Jefferson. At the close of the presentation of plaintiff's case the defendant moved for dismissal of the matter. The court granted the motion and dismissed the case. Subsequently, a written judgment, supported by written reasons for judgment, was rendered granting defendant's motion for involuntary dismissal of plaintiff's case. Plaintiff brings this appeal. We reverse.
At the start of the trial the parties entered into the following stipulations:
1. On September 4, 1991 a field jumper owned by the defendant spontaneously burned open.
2. The cause of the field jumper burning open is unknown.
3. The jumper burning open caused single phasing on the service supplied by defendant to the facilities of plaintiff.
4. Although the defendant denies liability, it is stipulated that the plaintiff incurred damages to its air conditioning equipment which cost $2,926.41 to repair.
Manhattan presented testimony from two witnesses. Mr. Mark Brown, an air conditioning contractor, who testified that he was called by Manhattan to service three air conditioners which had been damaged. Mr. Brown testified that he found two had shorted compressors and that "it was evident that the building had underwent a single phase application or problem". A third unit had blown fuses, but was operational after the fuses were changed. Mr. Brown also stated that all eight units had single phase protectors installed after the units were delivered from the factory. He further explained that the electrical configuration which services the eight units is a three phase application coming from a circuit breaker panel in which the two units damaged were the first two off the circuit. "They were at the top of the bust". Although Mr. Brown testified that a single phase application had occurred, he did not give an opinion on whether that phenomenon caused the damage either to the compressors or to the phase protectors.
Mr. Vincent L. Goodman, an electrical engineer, also testified for the plaintiff. Mr. Goodman testified that he examined and made photographs of the pole where the field jumper spontaneously burned open. Mr. Goodman explained that a jumper is a transition between one set of wires and another set of wires. It ties them together electrically. They are called jumpers because they were going from one feeder through a set of switches to another feeder. He further testified that the National Electric Safety Code requires that a utility company inspect their lines to note and correct defects. Mr. Goodman *1284 stated that an inspection of the jumper in question with an infrared sensor would have revealed that it was overheating. The overheating would have indicated that the jumper was coming loose and arcing. Mr. Goodman explained that the energy carried would be intermittent when the jumper is in this condition and it will eventually melt the aluminum. He also stated that a visual inspection would have shown that "the ground wire which normally connects to the overhead shield wire on the system was broken and sticking out and in the open air". Mr. Goodman testified that he had an occasion to inspect the same pole two years before and that defects found then had not been corrected. Photographs taken just after the incident, and two years before, were entered into evidence to support this testimony.
Mr. Goodman testified that the arcing and striking caused by the loose jumper created a condition similar to a lightning strike damaging the compressors before the single phase protectors could protect them. Mr. Goodman testified on several occasions that it was not the single phasing which caused the damage to the compressors. He opined that it was the restriking of the circuit which caused the damage and that the damage was done to the compressors before the single phasing occurred. He stated that the single phase protectors would have protected the units had the jumper simply come loose. However, they are not designed to protect against the strong power surge created when the jumper burned open. He explained that the single phasing did melt the protectors, but that occurred after the compressors were damaged.
When Manhattan's counsel asked Mr. Goodman what, in his expert opinion, was the cause of the jumper burning open there was an objection from LP & L. That objection was maintained since there was a stipulation that the cause of that event was unknown.
In the first assignment of error, Manhattan argues that the trial court erred in refusing to allow expert testimony to establish the cause of the burning open of the field jumper. In brief to this court Manhattan argues that the stipulation was made simply for judicial economy and was never intended by the parties to act as a bar to expert testimony on causation of the jumper burning open. Despite Manhattan's stated intent, we find that the stipulation entered into by the parties became the law of the case and prohibits the introduction of any evidence in that regard.
LSA-C.C. art. 1853 provides:
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
Stipulations have the effect of judicial confessions. They become the law of the case and are binding on the trial court when not in derogation of law. R.J. D'Hemecourt Petroleum v. McNamara, 444 So.2d 600, 601 (La. 1983), cert. denied, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 39 (1984); Mollere v. Creole Engineering Sales Co., 570 So.2d 212 (La.App. 5 Cir.1990), writ denied, 575 So.2d 371 (La. 1991). Consequently, we find the trial court's decision to exclude evidence concerning what caused the field jumper to burn open to be correct.
Manhattan also argues that the trial court erred in granting LP & L's motion for involuntary dismissal of the action. Our inquiry into the propriety of the grant of LP & L's motion begins with a review of La.Code Civ.P. art. 1672(B), which provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In non-jury trials, the appropriate standard for the trial court's determination of a motion to dismiss pursuant to art. *1285 1672(B) is whether the plaintiff has presented sufficient evidence to establish his claim by a preponderance of the evidence. Our review of the trial court's determination is based on manifest error. Lamaire v. Motor Convoy, Inc., 625 So.2d 638 (La.App. 3 Cir. 1993), writ denied, Lamaire v. Stewart, 632 So.2d 754 (La.1994).
In written reasons for judgment the trial court stated:
Initially, it should be noted that the parties stipulated that a field jumper burned open, due to an unknown cause. This caused single phasing, which resulted in damages to the plaintiff's equipment. (emphasis added)
The stipulations do not include the conclusion that the single phasing resulted in the damage to the plaintiff's equipment. The stipulations only show that single phasing occurred. Further, the evidence offered at trial by Vincent Goodman, plaintiff's expert, showed that the compressors were destroyed before the single phasing happened. He specifically stated on several instances during his testimony that the single phasing did not cause the damage to the compressors. In the opinion of Mr. Goodman a power surge occurring prior to the single phasing caused the damage to the compressors. Therefore, we find that the trial court's reasons for judgment contain a crucial finding of fact which is contradicted by the evidence.
In its petition for damages Manhattan asserted general negligence under LSA-C.C. art. 2315 and strict liability under art. 2317. The difference in proof required under these two articles is that, in negligent liability the plaintiff must show the defendant either knew or should have known of the defect, whereas under strict liability the plaintiff is relieved of proving that element. Roberson v. Huggins, 498 So.2d 32, 34 (La.App. 1 Cir.1986), writ denied, 501 So.2d 216 (La. 1987).
To prove liability under article 2317 the plaintiff need not allege negligence but must show: (1) the thing which caused the damage was in the care and custody of the defendant; (2) the thing had a vice or defect that created an unreasonable risk of injury to another; and (3) the defect caused the injury. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). There is an irrebuttable presumption that the custodian had knowledge of the defective condition. Once the plaintiff has established a defect and custody, the only defenses available are the fault of the victim, the fault of a third person, or causation by an irresistible force. Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980); LeBlanc v. Hullinghorst Industries, Inc., 542 So.2d 642 (La.App. 5th Cir.1989), writ not considered, 544 So.2d 412 (La.1989).
We recognize that the element of causation in electrical equipment is, by nature, problematic. In that regard we have followed the Supreme Court's reasoning in Townsend v. State Department of Highways, 322 So.2d 139 (La.1975), as stated in Lyons v. Parish of Jefferson, 425 So.2d 955 (La.App. 5th Cir. 1983), writ denied, 430 So.2d 97 (La.1983), at 959:
"It is only necessary that the evidence show that it is more probable than not that the harm was caused by the tortious conduct to the defendant ... This burden of proof may be satisfied by direct or circumstantial evidence ... It suffices if the circumstantial evidence excludes other reasonable hypotheses only with a fair amount of certainty so that it is more probable than not that the harm was caused by the tortious conduct of the defendant ..." Townsend, 322 So.2d 139, 141-42 (La. 1975). While, as Broussard v. Penn. Millers Mut. Ins. Co., 406 So.2d 574, 576 (La.1981) noted a defect may not be presumed by the mere occurrence of an accident, there are cases where a defect is the only reasonable explanation for the occurrence of the injury or where there is evidence offered that tends to make improbable some other cause, Moreover, proof of a specific defect which caused the accident is not required. (Citations omitted)
The doctrine of res ipsa loquitur has been used to grant relief where the testimony as to causation is inconclusive. See, Brewhouse v. New Orleans Public Service, 614 So.2d 118 (La.App. 4th Cir.1993).
We find the plaintiff has presented sufficient evidence to defeat the motion for involuntary *1286 dismissal and that it was manifestly erroneous for the trial court to grant the motion.
For the foregoing reasons we reverse the ruling of the trial court, reinstate the plaintiff's suit and remand the matter for further proceedings in accordance with this opinion. Costs for this appeal are cast against defendant.
REVERSED AND REMANDED.