775 So.2d 18 (2000)
John H. NORMAN
v.
Mary Kathryn Kite NORMAN.
Mary Kathryn Kite Norman
v.
John H. Norman.
Nos. 99-CA-2750, 99-CA-2751.
Court of Appeal of Louisiana, Fourth Circuit.
July 12, 2000.
*20 Michael R. O'Keefe, III, Richmond M. Eustis, Eustis & O'Keefe, New Orleans, LA, Attorneys for John H. Norman.
Martin L. Broussard, Jr., New Orleans, LA, Attorney for Mary Kathryn Kite Norman.
Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY, III and Judge DENNIS R. BAGNERIS, Sr.
JONES, Judge.
Plaintiff/Appellant, John H. Norman seeks review of the trial court's judgment regarding calculations of certain assets, liabilities, and reimbursement claims of former community property owned by him and his former wife.

FACTS
Mary Kathryn Kite Norman and John H. Norman were married on September 6, 1969. Mr. Norman filed a petition for separation and divorce on November 7, 1990, and a judgment of separation was entered on August 15, 1991. The termination date for the community of acquits and gains is established as November 7, 1990.
Ms. Norman was given custody of the two minor children, Hudson and Caroline, and occupancy of the family home at 3625 Red Oak Court. Mr. Norman assumed control of two rental properties that the couple owned. The first property, located at 833-835 Opelousas Street, in the Algiers section of the City of New Orleans, was purchased in 1979 for $53,000. It was appraised in June 1979 for $85,000 and reappraised in April 1981 for $127,000. The second rental property, located at 616-618 Belleville Street, Algiers also in the section of the city, was purchased in the early eighties for $55,000. Shortly after purchase, this property was appraised for $100,000. Throughout the eighties the properties were adequately maintained and managed and consistently rented, but were never profitable.
In 1990, when Mr. Norman assumed control of the two rental properties, his Statement of Income and Expenses which he filed in the trial court that December, stated that the monthly rental payments for the two properties totaled $1,379 or $16,548 per year. Subsequently, the rental income dramatically declined and the properties deteriorated. By 1993, the properties were uninhabitable and Mr. *21 Norman had allowed the insurance on the rental properties to lapse and the mortgages to become delinquent.
Furthermore, in 1989, the couple had been forced to borrow $10,000 from their son's trust fund to pay off an obligation at Pelican Homestead.
The community partition trial was heard on February 26, 1999 and February 27, 1999. The court took the matter under advisement and ordered the parties to submit post-trial memoranda. On May 25, 1999, the trial court rendered judgment and reasons for judgment. The parties stipulated to many of the community's assets, liabilities, and reimbursement claims. After reconsidering extensive testimony, documentary evidence concerning issues surrounding the rental properties and the family home and the post-hearing memoranda, the trial court, entered an amended judgment on June 2, 1999 on the following issues:
(1) The trial court found that Mr. Norman mismanaged the two rental properties of which he assumed control in 1990. The court found that evidence revealed a dramatic drop in the collection of rent, a failure to list vacant apartments through rental agencies or newspaper ads, a failure to make minimal repairs and replace movables such as washers, dryers and air conditioners which were stolen from the properties, delinquent mortgage payments resulting in foreclosure of the Belleville property, and the lapsing of insurance on the rental properties.
As a result of the mismanagement of the rental properties the trial court determined that the community sustained a loss of rental income. The court awarded Ms. Norman one half of the rental payments received by Mr. Norman after the termination of the community and one half of the loss of future rent which Mr. Norman would have received if the rentals had continued under the same terms from the termination of the community until the date of the partition trial. The trial court found that the average rental income from 1991 to 1998 was $16,500 per year and that the total rental value lost to the community is $132,000.
The court further ordered reimbursement to Mr. Norman for expenses incurred on the properties located at Opelousas and Belleville, including the mortgages paid on the properties and maintenance expenses. However, the court excluded the following expenses due to Mr. Norman's mismanagement of the rental properties: (1) legal fees and cost of bringing the Belleville property out of foreclosure, (2) time Mr. Norman spent maintaining and managing the rental property, and (3) Mr. Norman's separate labors in caring for and maintaining the rental properties.
Finally, the trial court assigned a value to the property located at 616-618 Belleville Street at $105,000 and the property located at 833-835 Opelousas Avenue at $125,000. The court stated that it was not assigning a loss of value on the rental properties.
(2) The trial court allocated reimbursements to Ms. Norman for repairs and improvements made to the family home located at 3625 Red Oak Court, also in Algiers in the amount of $36,327.03. The trial court determined that the following work was necessary and enhanced the value of the property: waterproofing the house, tree removal, termite and pest control, tree removal and floor replacement, garage repair and replacement of marble floor, filling in the swimming pool, yard restoration, roof replacement, side walk replacement, Home Owner's Association fee and installation of an alarm system. The trial court denied reimbursement for the lawn care service at Red Oak Court.
Finally, the trial court was unpersuaded and rejected Mr. Norman's assertions that Ms. Norman's reimbursement claims should be reduced by ten percent for the use of one room in the home for business purposes. The court also rejected Mr. Norman's request for rent from Ms. Norman because of her exclusive use and occupancy *22 of the home. Furthermore, the court found that no evidence was presented to support Mr. Norman's assertion that the property at Red Oak Court was mismanaged, so it found no mismanagement of the property.
(3) The trial court found that Ms. Norman is entitled to reimbursement for the money she gave her son to satisfy a $10,000 debt to the son's trust fund. However, the trial court was "unpersuaded and baffled" by Mr. Norman's testimony asserting that the purchase of an automobile and the money he spent in bringing his son home after he was involved in a major traffic accident was a repayment of the trust loan.
It is from these findings that the plaintiff/appellant, John H. Norman appeals.

DISCUSSION
In his appeal, Mr. Norman asserts eleven assignments of error. These are consolidated as follows:
1. Whether the trial court abused its discretion in valuing the rental properties located at 616-618 Belleville Street and 833-835 Opelousas Avenue higher than their appraised values.
2. Whether the trial court erred in its calculation of the net lost rental income.
3. Whether the trial court's findings regarding Mr. Norman's duties and credits toward the two rental properties were erroneous.
4. Whether the trial court erred in reimbursing Ms. Norman for expenses incurred and in denying Mr. Norman rent during her occupancy of the former matrimonial domicile at 3625 Red Oak Court.
5. Whether Mr. Norman's purchase of an automobile for his son was satisfaction of a community debt owed to the son's trust fund.
6. Whether the trial court disregarded several of the parties' stipulations and made clerical errors.
We amend the trial court's findings and affirm as amended.

RENTAL PROPERTIES: 833-835 OPELOUSAS AVENUE and 616-618 BELLEVILLE STREET
In his first two assignments of error, Mr. Norman argues that the trial court abused its discretion when it assigned higher values to the two rental properties than those submitted by the party's appraisers.
Mr. Norman's appraiser, Dale Fleishmann, valued Belleville at $45,000; Ms. Norman's appraiser, John Phelan, valued Belleville at $85,000. The trial court valued Belleville at $105,000. Mr. Norman's appraiser valued Opelousas at $47,000 and Ms. Norman's appraiser valued Opelousas at $80,000. The trial court valued Opelousas at $125,000. He contends that these valuations are clearly wrong because they are not within the ranges determined by the appraisers and are therefore unsupported by the record. He also argues that according to La. R.S. 9:2801(4)(a) "The court shall value the assets as of the time of trial on the merits..." Furthermore, he points out that the trial court explicitly stated that it was not assigning a loss of value on the rental properties.
Conversely, Ms. Norman argues that the trial court valued the rental properties in light of the court's finding that Mr. Norman mismanaged the properties. She asserts that appraiser John Phelan testified that if the Opelousas property were habitable it would be worth $140,000 to $160,000. Mr. Norman admitted at trial that the properties would be worth 20-40% more today. Finally, she argues that the damage caused by Mr. Norman's mismanagement could have been calculated separately from the property values assigned by the court, but it chose to combine them, reaching the same result. Therefore, the trial court's finding was reasonable. We disagree.
*23 Trial courts are given broad discretion in determining values of former community property. If the trial court's valuations are reasonably supported by the record and do not constitute an abuse of discretion, its determinations should be affirmed. Alford v. Alford, 94-1464 (La. App. 3 Cir. 4/5/95), at 7, 653 So.2d 133, 136. In valuing assets, the trial court is not required to accept, at face value, the valuation placed on assets by either spouse. Sherrod v. Sherrod, 97-907 (La.App. 5 Cir. 3/25/98), at 6, 709 So.2d 352, 355.
The trial court's valuations are unsupported by the record. Although the trial court determined that Mr. Norman mismanaged the properties, and testimony from appraiser John Phelan and Mr. Norman revealed that these properties' values would have increased had they been maintained properly, the trial court stated that it did not assign a loss of value to the properties. Furthermore, La. R.S. 9:2801(4)(a) provides that, "The court shall value the assets as of the trial on the merits..." However, the trial court chose values outside the range provided by the parties' appraisers and unsupported by the record. This is an abuse of the trial court's discretion. Accordingly, we amend the trial court's determination and place the value of the Belleville Street property at $85,000, and the value of the Opelousas street property at $80,000.

CALCULATION OF THE LOST RENTAL INCOME
In this assignment of error, Mr. Norman claims that the trial court used gross rental income figures instead of net rental income figures to calculate the lost rental income. He argues that the proper method of determining the lost rental income is to calculate the average gross rent received between 1982 and 1989 ($15,760), and subtract from that figure the average gross rent received between 1991 and 1998 ($2,606), to reach the average lost gross rent per year ($13,154). These figures are taken from the parties' income tax returns. Mr. Norman also asserts that the trial court did not subtract his expenses in its calculations, and failed to note that he reduced the debt at the end of the period he managed the properties.
Ms. Norman argues that the trial court determined the lost rental income correctly, but conservatively, by failing to consider the possible rise in rental rates in Algiers during the period Mr. Norman managed the properties. According to Mr. Norman's Statement of Income and Expenses filed with the court in December 1990, the rental units were producing $1,379 per month or $16,558 per year. The trial court rounded the yearly figure to $16,500 and multiplied it by eight to reach $132,000 in total lost rental income for the years Mr. Norman had control of the property. Ms. Norman also asserts that Mr. Norman was reimbursed $127,383 for expenses and mortgages on the properties, therefore resulting in lost net rental income.
The record indicates that the trial court was well within its vast discretion in determining future rental loss. The court cited Kyson v. Kyson, 596 So.2d 1308, 1319-1323 (La.App. 2 Cir.1991), where in the Court of Appeals for the Second Circuit held that a wife was entitled to one-half of lost net future rents until the partition trial, when the husband breached his duty of prudent administration by terminating a profitable community lease without the other spouse's knowledge or agreement. Kyson v. Kyson, 596 So.2d 1308, 1319-1323 (La. App. 2 Cir.1991). Furthermore, Louisiana Civil Code Article 2369.3, comment (d) states, "The phrase `in a manner consistent with the mode of use of that property immediately prior to termination of the community regime' is intended to particularize the standard against which to judge the acts of a spouse undertaken to preserve and especially to manage the former community property."
In the present case, the trial court found that Mr. Norman breached his duty of prudent administration by failing to properly *24 manage the properties and allowing them to deteriorate. Therefore, the trial court made its calculations based on what the rental income would have been had Mr. Norman maintained the status quo. When Mr. Norman assumed control of the properties, the rental income was approximately $16,500 per year according to Mr. Norman's Statement of Income and Expenses in December 1990. If Mr. Norman had maintained that level of rental income, rental income would have equaled $132,000 for the eight year period he had control. The trial court did not attempt to consider the rise in rental rates, for this would have been merely speculative. Therefore, the ruling of the trial court is not clearly wrong.

JOHN H. NORMAN'S DUTIES AND CREDITS REGARDING THE RENTAL PROPERTIES
In his fourth, fifth and sixth assignments of error, Mr. Norman argues that the trial court erroneously expected him to use separate funds to pay community debts; the trial court erred in not reimbursing him for attorney's fees and court costs associated with foreclosure proceedings against one of the rental properties; and the trial court erred in not reimbursing him for his time and management of the rental properties.
Mr. Norman argues that there is no legal requirement to use separate property to satisfy a community debt. He cites Cooper v. Cooper, 619 So.2d 1210 (La.App. 1 Cir.1993), where a spouse was seeking reimbursement for community funds used to satisfy a community debt. The court denied reimbursement, stating that a spouse is not obligated to pay a community debt with separate funds.
In the present case, Mr. Norman asserts that when community funds are unavailable or non-existent, he should not have to use separate funds to satisfy the debt. The Louisiana Civil Code is silent as to whether separate funds shall be used to satisfy a community debt. However, Article 2369.3 imposes a duty to preserve and maintain prudently former community property under a spouse's control. Comment (a) states that this duty is higher than the standard of care imposed on a co-owner and higher than the standard imposed during the marriage. Comment (f), in reference to Article 806, provides for reimbursement of separate funds if used in compliance with this article. Therefore, it seems the intent of Article 2369.3 is that in the absence of community funds a spouse may be forced to use reimbursable separate funds to satisfy a community debt.
Next, Mr. Norman argues that he should be reimbursed for one-half the attorney's fees and court costs associated with foreclosure proceedings against the Belleville street property. He claims that in 1991, he did not have the means in separate or community funds to pay the mortgage and fell behind in his payments, therefore litigation ensued. Ms. Norman refutes this argument and asserts that Mr. Norman found $15,000 "somewhere" to bring the mortgage current and $3,400 in attorney's fees. This was prior to his parents' death and inheritance.
The trial court found that the attorney's fees and court costs associated with foreclosing proceedings were an unnecessary expense that resulted from Mr. Norman's mismanagement of the property. The court stated in its reasons for judgment that Mr. Norman's actions of allowing these properties to fall into disrepair and the mortgages to become delinquent were troubling. Furthermore, the court was not convinced that Mr. Norman lacked the financial strength to adequately maintain the properties. We find the trial court was not manifestly erroneous or clearly wrong in this finding of fact.
Finally, Mr. Norman asserts that he should be reimbursed for his time in managing and maintaining the properties. He presents no legal basis for this assertion. Conversely, Louisiana Civil Code *25 Article 2369.1 states that after the termination of the community regime, the provisions governing co-ownership govern former community property. Co-ownership Article 806, comment (c) states, "A co-owner is not allowed to receive anything for his own management of the thing that is held in indivision unless he is entitled to such a recovery under a management plan adopted by agreement of all the co-owners, by judgment, or under the law of unjust enrichment." There is no evidence in the record of a management plan. Therefore, the ruling of the trial court is not clearly wrong.

REIMBURSEMENTS REGARDING THE FAMILY DOMICILE AT 3625 RED OAK COURT
In his seventh, eighth and ninth assignments of error, Mr. Norman argues that the trial court erroneously reimbursed Ms. Norman for monthly neighborhood association fees and an alarm system; the trial court erroneously failed to reduce Ms. Norman's reimbursements by ten percent for her use of one room of the family home for business purposes; and the trial court erred in failing to award Mr. Norman rent for Ms. Norman's occupancy of the family domicile.
Mr. Norman contends that the monthly fees for the homeowner's association and expenses associated with the alarm system are items of routine maintenance and do not confer a substantial economic benefit to the property. Ms. Norman argues that the homeowner's association fee is mandatory for all homeowners in the subdivision and a failure to pay the fee would result in a lien on the property. The alarm system has been in place since the couple purchased the house and was necessary for their protection. Ms. Norman asserts that the failure to pay these expenses would have made her vulnerable to a claim for mismanagement.
Expenses incurred between the termination of the community and partition of the community are awarded only when the party claiming reimbursement can prove that the work was necessary and value of the property was enhanced. Jones v. Jones, 605 So.2d 689, 693 (La. App. 2 Cir.1992). Items of maintenance occasioned by the use of the dwelling are not reimbursable. Jurgelsky v. Pinac, 614 So.2d 1331, 1336 (La.App. 3 Cir.1993).
The trial court found that these claims were necessary and conferred an economic benefit to the community. They existed prior to the termination of the community and are reasonable in accordance with the duty to preserve and maintain the property in the manner in which it was always kept. Reimbursements are factual determinations and absent an abuse of discretion the trial court's decision should not be disturbed on appeal. Rosell v. ESCO, 549 So.2d 840 (La.1989). Therefore, we find no error by the trial court.
Next, Mr. Norman argues that Ms. Norman's reimbursements for expenses should be reduced by ten percent because she used one room of the house for business purposes. Ms. Norman asserts that the reimbursed expenses were not business related and had nothing to do with the room she uses for business purposes. She argues that expenses would have been incurred regardless of the business use.
Mr. Norman presents no legal basis for his argument. Further, the trial court has broad discretion in making factual determinations and absent an abuse of discretion their decisions should not be disturbed. Rosell v. ESCO, 549 So.2d 840 (La.1989). Therefore, we find no error by the trial court.
Finally, Mr. Norman asserts that he is entitled to rent from Ms. Norman for her occupancy of the family domicile since the children have reached the age of majority. However, La. R.S. 9:374(c) states *26 in pertinent part that a spouse, "shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court." Furthermore, the Louisiana Supreme Court in McCarroll v. McCarroll, held that rental payments must be awarded contemporaneous with the award of occupancy and may not be assessed retroactively unless otherwise agreed by the spouses or ordered by the court. McCarroll v. McCarroll, 96-2700 (La.10/21/97), at 18, 701 So.2d 1280, 1289. In December 1990, Ms. Norman was awarded occupancy of the family home and Mr. Norman was denied occupancy and rent. There is no evidence in the record that the couple had any rental agreement. Therefore, we affirm the trial court's denial of rent to Mr. Norman.

JOHN H. NORMAN TRUST FUND
In his tenth assignment of error, Mr. Norman asserts that the trial court erroneously rejected his purchase of an automobile as satisfaction of a debt owed to his son. Mr. Norman argues that the automobile was not a donation. The intent of the donor is the crucial factor and Mr. Norman asserts that his intent in purchasing the automobile was to liquidate the debt he owed to his son. This is a factual determination of which the trial court has broad discretion, and absent an abuse of discretion may not be disturbed. Rosell v. ESCO, 549 So.2d 840 (La.1989). After hearing Mr. Norman's testimony, the trial court found that the automobile was a gift and not intended to satisfy a debt owed to his son. Absent testimony from his son, it is not clear whether the child knew of the debt owed to him. Therefore, we find no error by the trial court.

STIPULATIONS AND CLERICAL ERRORS
In his eleventh assignment of error, Mr. Norman asserts that the trial court erroneously failed to consider several of the parties' stipulations and made clerical errors in its calculations of the community assets and reimbursement claims. Mr. Norman claims that the trial court disregarded several of the parties' stipulations. These include the liability on the Belleville Street property as $150,500, instead of $150,000, and Ms. Norman's reimbursement to Mr. Norman for fifty percent of legal expenses at Nesser, King & LeBlanc in the amount of $5,879. Mr. Norman also claims that the trial court made clerical errors by placing the total value of the community assets at $860,249.58 instead of $866,449.58, and their net value at $681,249.58 instead of $687,459.58. Finally, Mr. Norman asserts that the trial court erred in its calculation of his total reimbursements, which should equal $151,970 instead of $138,258.
Ms. Norman argues it would have been more appropriate and less expensive for Mr. Norman to raise these clerical errors in a Motion for Amendment of Judgment or a Motion for a New Trial. Ms. Norman does not argue that the trial court's calculations are correct.
Stipulations have the effect of judicial confessions. 2304 Manhattan Blvd. Partnership v. L.P. & L. Co., 94-192 (La. App. 5 Cir. 9/14/94), at 4, 643 So.2d 1282, 1284. They become the law of the case and are binding on the trial court when not in derogation of the law. Id.
Finding that the trial court did error in these calculations, we amend the trial court's calculations based on the parties' stipulations and correct the clerical errors. Therefore, the gross value of the community assets is $801,449.58, and the net value is $621,949.58. Each party is entitled to $310,974.79 before reimbursements. Mr. Norman's gross reimbursements amount to $78,924.50, and his net reimbursement, after subtracting Ms. Norman's gross reimbursement of $67,151.69, is $11,772.81. Therefore, after the reimbursement claim, Mr. Norman is entitled to $322,747.60 and Ms. Norman is entitled to $299,201.98.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court regarding: the calculation of net lost rental income to Ms. *27 Norman, the denial of reimbursements to Mr. Norman for attorney's fees and time spent managing the rental property, the reimbursements to Ms. Norman for expenses incurred at the Red Oak Court home, the denial of a ten percent reimbursement to Mr. Norman for Ms. Norman's use of one room in the family home for business purposes, the denial of rent to Mr. Norman for Ms. Norman's occupancy of the family home, and Mr. Norman's purchase of an automobile as satisfaction of a debt owed to the son. However, we amend the trial court's judgment as to the valuations of the two rental properties and the calculations of community assets and reimbursements. As herein indicated, the judgment of the trial court is affirm as amended. Mr. Norman is to pay all costs of this appeal.
AMENDED AND AFFIRMED AS AMENDED.