MARY C. VINET

VERSUS

RUSSELL M. VINET

NO. 20-CA-387

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 784-683, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

April 14, 2021

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and Stephen J. Windhorst

<u>**JUDGMENT AMENDED; AFFIRMED AS AMENDED**</u>
**RAC**
**MEJ**
**SJW**

COUNSEL FOR PLAINTIFF/APPELLEE,
MARY C. VINET
        Jennifer C. Carter

COUNSEL FOR DEFENDANT/APPELLANT,
RUSSELL M. VINET
        Gary S. Brown

**CHAISSON, J.**

In this community property partition, Russell Vinet appeals a judgment of the trial court that accepted the recommendation of the hearing officer to grant Mary Vinet a reimbursement claim of one half of $91,695.01 for her separate funds used to purchase the community home. Ms. Vinet has also filed an answer to the appeal wherein she asserts that the trial court legally erred by adopting the recommendations of the hearing officer *in toto*, contrary to stipulations made by the parties following the issuance of the hearing officer's recommendations. For the following reasons, we amend the judgment of the trial court and affirm the judgment as amended.

**FACTS AND PROCEDURAL HISTORY**

Mr. Vinet and Ms. Vinet were married on October 16, 2009, separated in May of 2018, and divorced on December 6, 2019. No antenuptial agreement was signed, and it is uncontested that they were subject to the legal regime of community of acquets and gains. On November 13, 2017, the parties purchased a property at 8108 Ferrara Drive in Harahan, Louisiana for $355,000.00. At the time of the parties' separation, Ms. Vinet was granted interim use and occupancy of the property, which continued through the date of the trial court's final judgment.

Following the termination of the matrimonial regime, Mr. Vinet and Ms. Vinet disagreed over the partition of the community. Pursuant to the procedure set forth in La. R.S. 9:2801, each party submitted a sworn descriptive list of all community property and all community liabilities. The parties concurred on the valuation of most of the assets and liabilities but traversed others, including the value of the home, the value of the rental reimbursement rate owed by Ms. Vinet as offset for her exclusive use of the home, and the entitlement to and value of a

reimbursement claimed by both Ms. Vinet and Mr. Vinet for approximately $91,695.01 in funds used as a down payment for the home.

After a hearing on the matter, the hearing officer itemized and allocated the community assets and liabilities and recognized some claims for reimbursement. The parties stipulated to the values and allocation of most of the assets and liabilities. In accordance with La. C.C. art. 3071, these stipulations were made a Consent Judgment of the court. Both parties acknowledged that they could not object to or appeal these stipulations.

In addition to the stipulations, the hearing officer also made the following key recommendations: that the property, a community asset, valued at $355,000.00 (its purchase price) should be allocated to Ms. Vinet; that Mr. Vinet was entitled to a reimbursement for Ms. Vinet's use of the community home set at one half of $2,200.00 per month; and that Ms. Vinet is entitled to a reimbursement for use of $91,695.01 of her separate funds as the down payment to purchase the property.[1] Following the entire accounting, the hearing officer found that Ms. Vinet owed Mr. Vinet a cash equalizing sum of $44,432.81. These recommendations were made the Interim Judgment of the Court.

Both parties filed objections to the hearing officer's recommendations. Mr. Vinet objected to the hearing officer's setting the value of the home at $355,000.00 instead of the value set by his appraiser of $370,000.00, and similarly objected to the setting of the market rate for rental reimbursement at $2,200.00 per month instead of $2,400.00 per month. Most notably, Mr. Vinet objected to the decision of the hearing officer to allow Ms. Vinet a reimbursement for the use of $91,695.01 of her separate funds for the down payment of the family home. Mr.

---

[1] In the hearing officer's calculations, Ms. Vinet was awarded one half of the $91,695.01 reimbursement claim. As discussed below, pursuant to La. C.C. art. 2367, the spouse whose separate property was used for the acquisition of community property is entitled to reimbursement from the other spouse for one half of the amount or value that the separate property had at the time it was used.

Vinet argued that these funds were donated to him and became his separate funds, which he then used as the down payment for the home, entitling him to the reimbursement claim in that amount.

Ms. Vinet also objected to the recommendations of the hearing officer. She disputed the values for the home and the rental value assigned by the hearing officer, arguing that her appraiser had assigned lower values to both. She also objected to the valuation of her retirement account, stating that it did not reflect a true cash value. Further, she objected to the allowance of a reimbursement claim to Mr. Vinet for payments made on credit cards subsequent to the date of termination of the community property regime. Finally, she objected to the failure of the hearing officer to give her a full reimbursement of $94,000.00, contending that was the amount she transferred from her separate account to the community account to facilitate the purchase of the home.

The parties submitted the matter to the trial court on the briefs and evidence previously admitted at the hearing officer conference. At the time of submission, the parties had stipulated that the home should be valued at $320,000.00, the rental reimbursement rate should be set at $2,000.00 per month, resulting in a total rental reimbursement claim in Mr. Vinet's favor in the sum of $50,000.00, and that, due to additional mortgage payments made, the mortgage reimbursement claim in favor of Ms. Vinet resulted in a total mortgage reimbursement claim of $43,407.64.

On September 8, 2020, the trial court rendered judgment dismissing both parties' objections and made the recommendations of the hearing officer the judgment of the Court.

Mr. Vinet appeals the judgment of the trial court, raising multiple assignments of error that all concern the trial court's allowance of Ms. Vinet a reimbursement for the separate funds used as the down payment on the home. Ms. Vinet filed an answer to the appeal wherein she contends that the trial court erred

in failing to use the value for the home, the figures for Mr. Vinet's rental reimbursement claim, and the figures for Ms. Vinet's mortgage payment reimbursement claim that the parties stipulated to prior to the submission of the case to the trial court. She also raises as error her previous objections concerning the valuation of her retirement account, Mr. Vinet's reimbursement for credit card payments made subsequent to termination of the community property regime, and the failure to provide her with a full reimbursement of $94,000.00 for the down payment funds.

**DISCUSSION**

The trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. *Vedros v. Vedros*, 16-735 (La. App. 5 Cir. 10/25/17), 229 So.3d 677, 680, *writ denied*, 17-2119 (La. 2/23/18), 237 So.3d 1185, and *writ denied*, 18-004 (La. 2/23/18), 237 So.3d 520. The trial court is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. *Id*. The trial court's allocation or assignment of assets and liabilities in the partition of the community property is reviewed under the abuse of discretion standard. *Id*. In addition, whether a reimbursement claim is allowed is a finding of fact which is reviewable under the manifest error standard. *Id*.

Regarding the parties' assignments of error relating to the claim for reimbursement for the funds used towards the down payment of the home, the following facts are undisputed: at the time the Vinets decided to purchase the home, they agreed that, in order to obtain better terms from their lender, Mr. Vinet would be the sole signatory on the promissory note for the loan, while Ms. Vinet would provide funds from the sale of her previous home to be used as a down payment for the purchase of the new home. In multiple increments, Ms. Vinet transferred $94,000.00 of her separate funds into the couple's joint Capital One checking account. Once the precise amount of the down payment was calculated,

$91,695.01 of those funds were withdrawn from the joint checking account in the form of a Capital One cashier's check dated November 13, 2017. This check was made out and tendered to the title company for the closing, TitleSource, LLC, and contained the notation "RE: Mary and Russell Vinet." In accordance with the bank's lending requirements, Ms. Vinet also signed a "gift letter," dated November 6, 2017, which stated that Ms. Vinet certified that she had given $110,000.00 to Mr. Vinet to be applied toward the purchase of the home. This gift letter was signed only by Mr. Vinet and Ms. Vinet. Both Mr. Vinet and Ms. Vinet signed the mortgage and title documents for the home.

La. C.C. art. 2367 allows for a spouse to claim a reimbursement for one-half the value of any separate property used during the existence of the community property regime for the acquisition of community property. Mr. Vinet argued to the trial court that the gift of funds to him meant that the down payment funds were his separate property and that he was therefore entitled to claim the reimbursement. He asserted that the gift letter is evidence of Ms. Vinet's intent to donate the funds to him, and that the transfer of funds to him was completed when she deposited the money in the couple's joint checking account and signed the gift letter, or when the funds were withdrawn in the form of a cashier's check that Mr. Vinet used to purchase the home. To the contrary, Ms. Vinet argued to the trial court that she never intended to make a gift of the funds to Mr. Vinet and that the funds were meant solely to be used for the down payment on the family home. In its written reasons for judgment accepting the recommendations of the hearing officer to allow Ms. Vinet to claim a reimbursement for the use of the funds, the trial court found Ms. Vinet's testimony regarding her intent in transferring the funds to be credible.

An *inter vivos* donation is a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor

of another, called the donee, who accepts it. La. C.C. art. 1468. A donation *inter vivos* must be made by authentic act unless otherwise expressly permitted by law. La. C.C. art. 1541. The donation *inter vivos* of a corporeal movable may be made by delivery of the thing to the donee without any other formality. La. C.C. art. 1543. In order for the donation to be valid, there must be a divestment accompanied by donative intent. *In re Succession of O'Krepki*, 16-50 (La. App. 5 Cir. 5/26/16), 193 So.3d 574, 579, *writ denied*, 16-1202 (La. 10/10/16), 207 So.3d 406. The burden of proving the donation is on the donee, and this proof must be strong and convincing. *Id*. at 580. When the donor's will to give and the donee's actual possession of the movable property operate simultaneously, there is sufficient delivery to constitute a valid manual donation *inter vivos*. *In re Succession of Hunt*, 47,372 (La. App. 2 Cir. 9/20/12), 135 So.3d 654, 658. For the purposes of a donation *inter vivos*, delivery is defined as relinquishing control or dominion over property and placing it within the dominion of the donee, irrevocably. *Dastugue v. Fernan*, 95-394 (La. App. 5 Cir. 10/18/95), 662 So.2d 538, 541. Funds deposited into a joint bank account remain the property of their original owner absent an authentic act of donation. *O'Krepki*, 193 So.3d at 580. The right of withdrawal, or having one's name listed on the account, is not tantamount to ownership of the funds therein. *Id*.

It is undisputed that the gift letter was not signed before a notary and two witnesses, and therefore, not an authentic act as required under Louisiana law. A review of the undisputed facts before us indicate that, regardless of Ms. Vinet's actual intent, there is no evidence of a completed manual delivery of Ms. Vinet's separate funds to Mr. Vinet. The mere act of placing them in the joint checking account did not effect a donation to Mr. Vinet because Ms. Vinet could have withdrawn them at any time. Additionally, the withdrawal of the funds in the form of a cashier's check made payable to TitleSource, LLC did not result in a manual

transfer of the funds to Mr. Vinet. Mr. Vinet never had complete, irrevocable control over the funds, and therefore there was no completed *inter vivos* gift.

Mr. Vinet argues, in the alternative, that Ms. Vinet made a gift of her separate funds to the community, and therefore, under La. C.C. art. 2343.1, the funds used to purchase the home were community funds and neither party should enjoy the benefit of a reimbursement claim for their use.

La. C.C. art. 2343.1 states:

> The transfer by a spouse to the other spouse of a thing forming part of his separate property, with the stipulation that it shall be part of the community, transforms the thing into community property. As to both movables and immovables, a transfer by onerous title must be made in writing and a transfer by gratuitous title must be made by authentic act.

The language of this article is clear that gratuitous transfers must be made by authentic act. As noted above, no authentic act accompanied Ms. Vinet's transfer of the funds in this instance. We find therefore that this article does not apply, and Mr. Vinet's argument is without merit. Having found that there was no donation of Ms. Vinet's separate funds to either Mr. Vinet or to the community, we further conclude that the trial court did not manifestly err in allowing Ms. Vinet a reimbursement claim for the use of her separate funds for the down payment for the purchase of the family home, a community asset, pursuant to La. C.C. art. 2367.

The final matter concerning the reimbursement claim for the down payment is raised by Ms. Vinet in her answer to the appeal. She argues that the trial court erred in awarding her reimbursement of only one half of $91,695.01, rather than the $94,000.00 that the bank statements show she deposited into the joint checking account. In support of this argument, Ms. Vinet cites *Talbot v. Talbot*, 03-0814 (La. 12/12/03), 864 So.2d 590 for the proposition that, once a party shows that

separate funds are deposited into a community account then the burden shifts to the other party to show that the community did not use those funds.

Ms. Vinet's reliance on Talbot is misplaced in this instance. The burden of proof is on the party making a reimbursement claim. *Ponson v. Ponson*, 17-469 (La. App. 5 Cir. 3/14/18), 241 So.3d 1213, 1223. The cashier's check is sufficient proof to show that $91,695.01 of Ms. Vinet's separate funds were used towards the down payment on the community home, thus entitling her to a reimbursement claim in that amount under La. C.C. art. 2367. The evidence provided by Ms. Vinet of the funds' deposit into the joint checking account does not prove that the remaining $2,304.99 was used to purchase the community home or some other purpose which would allow for reimbursement under La. C.C. art. 2367.

Additionally, Ms. Vinet stipulated before the hearing officer that the $5,617.93 remaining in the Capital One joint account at the time of termination of the community regime, an amount which may or may not have included some of these separate funds, was a community asset. Accordingly, we find this argument to be without merit and conclude that the trial court did not manifestly err in valuing Ms. Vinet's reimbursement claim for the down payment on the family home at one half of $91,695.01.

Ms. Vinet also raises in her answer to the appeal that the trial court erred in accepting the valuations of the hearing officer regarding her retirement account, which failed to take into account the present cash value of that account and in allowing Mr. Vinet to claim a reimbursement for payments made on community credit cards subsequent to the termination of the community regime. At the time of the hearing officer conference, Ms. Vinet stipulated to the value of her retirement account and to the value of Mr. Vinet's claim for reimbursement for credit card payments. These stipulations were made a Consent Judgment of the court signed by Ms. Vinet wherein she acknowledged that no objection or appeal could be

raised from said stipulations. Accordingly, we find these assignments of error raised by Ms. Vinet in her answer to the appeal to be without merit.

Finally, Ms. Vinet argues in her answer to the appeal that the trial court erred by adopting the recommendations of the hearing officer regarding the home value, the rental reimbursement figure, and the mortgage reimbursement figure, despite the subsequent stipulations that adjusted those values by agreement of the parties prior to submission of the objections to the trial court. Specifically, the parties stipulated that the value of the home was $320,000.00, the rental value of the home was $2,000.00 per month, resulting in a $50,000.00 rental reimbursement claim in Mr. Vinet's favor, and that additional mortgage payments made by Ms. Vinet resulted in a mortgage reimbursement claim in her favor in the amount of $43,407.64. Each of these figures are different than the figures used by the hearing officer in his calculations and subsequently adopted by the trial court.

Stipulations have the effect of judicial confessions. *Norman v. Norman*, 99-2750 (La. App. 4 Cir. 7/12/00), 775 So.2d 18. Stipulations become the law of the case and are binding on the trial court when not in derogation of the law. *Id.* In his appellate brief, Mr. Vinet acknowledges that the trial court was bound to accept the parties' stipulations regarding these values. Accordingly, we find that the trial court erred in failing to accept the parties' stipulations, and hold that the judgment must be amended to take into account these stipulated values.

Applying the stipulated value of $320,000 to the home results in a decreased net community estate of $109,477.50, to which each party is entitled to one-half, or $54,738.75. Based upon the negative allocation of $7,651.11 in debt to Mr. Vinet, Ms. Vinet would owe to Mr. Vinet, before consideration of reimbursement claims, the equalizing sum of $62,389.86.

Applying the stipulated figure of $43,407.64 in mortgage reimbursements to Ms. Vinet's reimbursement claims results in an increase in total reimbursements owed to her of $146,798.85, of which Mr. Vinet owes her one-half, or $73,399.42.

Applying the stipulated figure of $50,000.00 in rental reimbursements to Mr. Vinet's reimbursement claims results in an increase in total reimbursements owed to him of $74,942.60, of which Ms. Vinet owes him one-half, or $37,471.30. This results in net reimbursements owed by Mr. Vinet to Ms. Vinet in the sum of $35,928.12. Subtracting this net reimbursement owed by Mr. Vinet to Ms. Vinet from the equalizing payment owed by Ms. Vinet to Mr. Vinet for allocation of assets and liabilities ($62,389.86 - $35,928.12), results in a net equalizing payment owed by Ms. Vinet to Mr. Vinet in the sum of $26,461.74.

**CONCLUSION**

Accordingly, the judgment of the trial court is amended to provide that Ms. Vinet owes an equalizing payment to Mr. Vinet in the amount of $26,461.74. In all other respects, the judgment of the trial court is affirmed.

**JUDGMENT AMENDED;
AFFIRMED AS AMENDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 14, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**20-CA-387**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
JENNIFER C. CARTER (APPELLEE)          GARY S. BROWN (APPELLANT)

**MAILED**
NO ATTORNEYS WERE MAILED